## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| SOFT PRETZEL FRANCHISE SYSTEMS INC., | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | Case No. _____ |
| | : | |
| v. | : | |
| | : | |
| TARALLI, INC. (a/k/a TARALLI ENTERPRISES, LLC), STEVEN M. PISASALE, and LISA A PISASALE | : | |
| | : | |
| Defendants. | : | |

## COMPLAINT FOR PRELIMINARY INJUNCTION

Plaintiff Soft Pretzel Franchise Systems, Inc. ("SPF") submits this Complaint to preliminarily enforce the restrictive covenant and the propriety equipment buy-back provisions contained in the parties' Franchise Agreement, pending a final determination at a pending arbitration proceeding filed by SPF. In support of its Complaint, SPF states as follows:

## PARTIES

1.      Plaintiff SPF is a Pennsylvania corporation with its principal place of business at 7368 Frankford Avenue, Philadelphia, PA 19136.

2.      Defendant Taralli, Inc., a/k/a Taralli Enterprises, LLC ("Taralli"), is New Jersey limited liability company with a business address at 230 N. Maple Avenue, Marlton, New Jersey 08053.

3.      Defendants Steven M. Pisasale and Lisa A. Pisale (the "Pisasales") are husband and wife and residents of New Jersey and are the sole owners and members of Taralli. They have a principal place of business at 230 N. Maple Avenue, Marlton, New Jersey 08053.

## JURISDICTION

4.      SPF and Taralli are parties to a franchise agreement executed on December 21, 2006 (the "Franchise Agreement").   A copy of the Franchise Agreement is attached to this Complaint as "Exhibit A."  Pursuant to Section 16.2.3 of the Franchise Agreement, all disputes and claims pertaining to the Franchise Agreement are to be submitted to arbitration before the American Arbitration Association, except that pursuant to Section 16.2.6 SPF may seek preliminary injunctive relief in court to prevent any harm prior to or during the pendency of the arbitration proceedings.

5.      SPF has instituted an arbitration proceeding.   A copy of SPF's Demand for Arbitration is attached to this Complaint as Exhibit "B."

6.      This Court has jurisdiction over the parties and subject matter in this civil action pursuant to 28 U.S.C. §1332(a) in that the parties are citizens of the United States and domiciled in different states and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

## FACTS

**A.**      **The SPF System**

7.      SPF is the franchisor of retail businesses offering traditional "South Philadelphia" style soft pretzels freshly baked on the premises and other authorized products, using Franchisor's proprietary recipes, preparation and presentation methods, under the name Philly Pretzel Factory®.  SPF's franchisees are licensed to use SPF's trade names, trademarks, service marks and trade dress and are permitted to operate a business using SPF's business system.

**B.     Termination of the Franchise Agreement**

8.      Pursuant to the Franchise Agreement, which was executed on December 21, 2006, Taralli obtained the right and undertook the obligation to operate a Philly Pretzel Factory (the "Franchised Business") at Crispin Square, 230 N. Maple Avenue, Marlton, New Jersey, for a term of 10 years (the "Term").  See Exhibit A.  Contemporaneous with Taralli's execution of the Franchise Agreement, the Pisasales executed a personal guaranty pursuant to which they agreed to guarantee Taralli's obligations under the Franchise Agreement.  Id.

9.      Pursuant to Section 12.1.2.1 of the Franchise Agreement, SPF has the right to terminate the Franchise Agreement upon 15 days written notice to Taralli and the Pisasales if Taralli and the Pisasales fail to pay SPF any and all sums owed under the Franchise Agreement as and when due.

10.      On January 11, 2013, SPF sent Taralli and the Pisasales a notice of default (the "January Default Notice") as a result of their failure to report the Franchised Business's gross sales and pay royalty and advertising payments due under the Franchise Agreement, as well as their failure to pay an outstanding invoice dated February 4, 2011 for legal fees.  The January Default Notice provided Taralli and the Pisasales 15 days to cure their monetary defaults.

11.      Despite their receipt of the January Notice of Default, Taralli and the Pisasales failed to cure their monetary defaults within 15 days of their receipt of the January Notice of Default.

12.      By letter dated February 5, 2013, SPF notified Taralli and the Pisasales that the Franchise Agreement was terminated pursuant to Section 12.1.2.1.

13.      On February 8, 2013, Taralli and the Pisasales, along with the Pretzel Bakers Association of New Jersey, filed a Verified Complaint and an Order to Show Cause before the

Superior Court of New Jersey, Burlington County, Chancery Division, Docket No. BUR-C-17-13, to prevent SPF from terminating Taralli's franchise.

14.     On May 31, 2013, the parties appeared before the Honorable Karen L. Suter, P.Ch., for a hearing on Taralli and the Pisasales' Order to Show Cause application.   At the hearing, Judge Suter entered an Order permitting SPF to move forward with the termination of the franchise and ruling that the franchise would be terminated effective June 14, 2013.

**C.     Violation of the Post-Termination Covenant Not to Compete contained in the Franchise Agreement**

15.     On June 4, 2013, defendants' counsel wrote to plaintiff's counsel and stated that defendants "will continue to operate a pretzel shop at its current location under the name Marlton Soft Pretzels."   A copy of defendants' counsel's letter is attached to this Complaint as Exhibit "C."

16.     Pursuant to Section 10.5.2 of the Franchise Agreement the defendants are prohibited for a period of two years after the termination of the franchise agreement from owning or engaging in another business similar to SPF within a ten mile radius of the former franchise location or any other SPF franchisee.

17.     On June 12, 2013, Plaintiff's counsel wrote to defendants' counsel informing defendants, in part, that SPF intended to enforce the post-termination covenant not to compete contained in Section 10.5.2 of the Franchise Agreement and that SPF intended to exercise its right to purchase Taralli's equipment pursuant to Section 14.1 of the Franchise Agreement.

18.     Despite the termination of the Franchise Agreement, Taralli and the Pisasales are continuing to operate a business similar, if not identical, to the former SPF franchise, all in breach of the post-termination obligations under the Franchise Agreement.

19.     Further, despite the termination of the Franchise Agreement and SPF's notice of its intent to purchase the equipment of the former franchise, Taralli and the Pisasales have not cooperated.  Upon information and belief, Defendants are using the equipment of the former SPF franchise, including a proprietary pretzel stringing machine, to operate their competing business.

## COUNT I

## UNFAIR COMPETITION AND VIOLATION OF RESTRICTIVE COVENANT AND EQUIPMENT PURCHASE PROVISIONS OF THE FRANCHISE AGREEMENT

20.     SPF seeks to preliminarily enjoin Taralli's and the Pisasales' continued operation of a pretzel business at the location of defendants' former SPF franchise, and, to preliminarily enforce SPF's right to purchase the equipment of defendants' former franchise, including the propriety pretzel stringing equipment pending the hearing of this matter in arbitration.

21.     SPF has a high probability of success on the merits of its case because defendants are openly and unlawfully continuing to operate a pretzel business at the exact location of the former SPF franchise in violation of the restrictive covenant agreed to by the parties.

22.     Defendants are also failing to sell the equipment of the former SPF franchise, including the proprietary pretzel stringing equipment, to SPF in violation of the provision giving SPF the right to purchase the equipment of the franchise upon termination as agreed to by the parties.

23.     Upon information and belief, defendants are utilizing SPF's proprietary equipment recipes and methodologies to compete with SPF.

24.     Defendants' competing pretzel business at the location of the former SPF franchise and defendants' unlawful use of SPF's proprietary equipment, recipes and methodologies will cause SPF irreparable harm in that SPF will have difficulty franchising and refranchising defendants' territory; business in defendants' territory will be diverted from SPF's

authorized franchisees; and the goodwill related to SPF's business system will be diluted and taken from SPF's control.

25.     SPF has no adequate remedy at law in that the damages as set forth above, including the misappropriation and theft of its proprietary business system and trade secrets, and the consequent injury to consumer recognition and goodwill, and the inability to refranchise the affected trading area, cannot be compensated in monetary damages.

26.     Additionally, SPF's authorized franchisees and the consuming public will suffer irreparable harm as a result of defendants' conduct. The damages sustained by SPF as a result of the loss of its goodwill, the relationship problems encountered with its franchisees and the potential deception and harm to the consuming public cannot be ascertained nor can such harm be compensated for in monetary damages.

27.     SPF's immediate and irreparable harm will increase unless and until Taralli and the Pisasales are enjoined from violating their post-termination obligations, from avoiding their obligation to sell the equipment of their former franchise to SPF and otherwise competing unfairly with SPF.

28.     A preliminary injunction is the only method by which SPF can prevent the further usurpation of its business system and trade secrets.

**WHEREFORE**, SPF respectfully requests that this Court enter a preliminary injunction against Taralli and the Pisasales during the pendency of the parties' arbitration proceeding as follows:

> a.   Taralli and the Pisasales shall not, for a period of two years, either directly or indirectly, for themselves or through, on behalf of, or in conjunction with any other person, persons, partnership or corporation, own, maintain, engage in, be employed by or have any interest in any business specializing in whole or in part in the sale of soft pretzels at

or within ten miles of 230 N. Maple Avenue, Marlton, New Jersey or any other SPF franchisee.

b.  Taralli and the Pisasales shall sell SPF the equipment of its former franchise, including the proprietary pretzel stringing equipment, pursuant to Section 14, of the Franchise Agreement.

Respectfully submitted,

FISHER & ZUCKER, LLC

By: _____
Jeffrey Zucker, Esquire
Pa. Attorney ID No. 71234
21 South 21st Street
Philadelphia, PA 19103
(215) 825-3100
(215) 825-3101
jzucker@fisherzucker.com

Attorneys for Plaintiff
Soft Pretzel Franchise Systems, Inc.

Dated: June 28, 2013

7

# EXHIBIT   A

# SOFT PRETZEL FRANCHISE SYSTEMS, INC.

## FRANCHISE AGREEMENT

© Soft Pretzel Franchise Systems, Inc.
Franchise Agreement 2006

## DATA SHEET

Franchisee:  Taralli, Inc.

120 Preamble Drive

Marlton, NJ  08053

Effective Date:  November 13, 2006

Approved Location:  To be determined

Telephone Number:  856-988-6553

Facsimile Number:

Territory:  To be determined / MARLTON NJ / EVESHAM TWP .

The terms of this Data Sheet are incorporated into the attached Franchise Agreement.

© Soft Pretzel Franchise Systems, Inc.
Franchise Agreement 2006

# TABLE OF CONTENTS

BACKGROUND ...................................................................................................................... 1

1.  GRANT OF FRANCHISE ........................................................................................ 1

2.  TERM AND RENEWAL ........................................................................................... 2

3.  PROPRIETARY MARKS .......................................................................................... 3

4.  CONFIDENTIAL INFORMATION ........................................................................ 4

5.  FRANCHISE LOCATION ........................................................................................ 4

6.  FEES AND COSTS ..................................................................................................... 5

7.  ADVERTISING ........................................................................................................... 6

8.  SERVICES PROVIDED BY US ............................................................................... 7

9.  OBLIGATIONS OF FRANCHISEE ........................................................................ 8

10.  ACKNOWLEDGMENTS OF FRANCHISEE. ....................................................... 12

11.  SALE OR TRANSFER ............................................................................................... 13

12.  BREACH AND TERMINATION ............................................................................. 16

13.  RIGHTS AND DUTIES UPON TERMINATION OR EXPIRATION ................. 18

14.  OPTION TO PURCHASE PERSONAL PROPERTY ........................................... 19

15.  NOTICES ..................................................................................................................... 20

16.  INTERPRETATION .................................................................................................. 20

17.  REPRESENTATIONS ............................................................................................... 22

18.  GUARANTEE OF SHAREHOLDERS, PARTNERS, AND MEMBERS ........... 23

19.  SPOUSAL CONSENT ............................................................................................... 23

Exhibit A - Site Selection Addendum
Exhibit B - Personal Guarantee
Exhibit C – Restrictive Covenant and Confidentiality Agreement
Exhibit D - Collateral Assignment of Lease
Exhibit E - Conditional Assignment of Franchisee's Telephone Numbers
Exhibit F – Assignment and Assumption Agreement

© Soft Pretzel Franchise Systems, Inc.
Franchise Agreement 2006

## SOFT PRETZEL FRANCHISE SYSTEMS, INC.

### FRANCHISE AGREEMENT

THIS AGREEMENT is entered into on the date written on the Data Sheet to this Agreement by and between Soft Pretzel Franchise Systems, Inc., a Pennsylvania corporation, with its principal business address at 260 West Riverwoods Drive, New Hope, Pennsylvania 18938 (hereinafter referred to as "we," "us," or "our") and the named individual(s) or entity identified on the Data Sheet (hereinafter referred to as "you").

### BACKGROUND

A. We and our affiliates have developed a business system for the creation of retail businesses offering Soft Pretzel Factory products and other related products. Our franchises offer traditional "South Philadelphia" style soft pretzels freshly baked on the premises and served hot, as well as other authorized products under the marks "Philly Soft Pretzel Factory" and "Soft Pretzel Factory". We have developed a marketing concept and uniform standards and specifications for the operation of a Soft Pretzel Factory, all of which we may change, improve, and further develop, in our discretion (the "System");

B. The System is identified by means of certain trade names, trademarks, service marks logos, copyrights, emblems and other indicia of origin including, without limitation, the service marks "Philly Soft Pretzel Factory" and "Soft Pretzel Factory" as designated by us in our sole discretion (the "Proprietary Marks");

C. We grant franchises to qualified persons to operate a retail business under the System and Proprietary Marks (the "Philly Soft Pretzel factory", "Soft Pretzel Factory" or the "Factory");

D. You have applied to us for a franchise to operate a Factory and such application has been approved in reliance upon all of the representations made therein; and

E. You acknowledge that adherence to the terms of this Agreement and our standards and specifications are essential to the operation of your Factory and to the collective operation of the System.

### AGREEMENT

NOW, THEREFORE, in consideration of the foregoing recitals, which are incorporated in this Agreement by reference, and the mutual promises, commitments and understandings contained herein, the parties hereby agree as follows:

1. GRANT OF FRANCHISE

1.1. **Grant and Acceptance.** You are hereby granted the right, and you hereby undertake the obligation, to establish and operate one **Soft Pretzel Factory** using the Proprietary Marks and System upon the terms and conditions stated in this Agreement. During the term of this Agreement, for so long as you comply with its terms and conditions, we will neither establish or operate, nor license another to establish or operate another Soft Pretzel Factory in your Territory under the System and Proprietary Marks. The exclusivity of your Territory relates solely to the operation of a **Soft Pretzel Factory**. We do not otherwise hereby undertake to limit our rights of product or service distribution or to engage in other business activities in your Territory. You expressly understand and agree that we, or our affiliates reserve the right to: (i) own and operate, and license others to own and operate, **Factories** at any location(s) outside your Territory under the same or different marks; (ii) purchase or acquire independent or third party soft pretzel businesses located within the Territory, and to convert and operate these businesses as Soft Pretzel Factories, so long as we offer you right of first refusal to purchase the business; (iii) to distribute, or license others to distribute products identified by the Proprietary Marks or other marks we own or license through any alternative distribution method we or our affiliates may periodically establish or license, including through the Internet, or other concepts currently in existence or as may be developed in the future; (iv) sell

© 2004 SPF Franchising, Inc.
Franchise Agreement 2005

**Soft Pretzel Factory** products and other food and non-food products identified by the Proprietary Marks from carts or kiosks located in enclosed malls, airports, stadiums, amusement parks, military bases, and other closed markets within your Territory; (v) sell **Soft Pretzel Factory** products as frozen products, identified by the Proprietary Marks to grocery stores or other markets and/or vendors; (vi) establish other franchises, company-owned stores or channels of distribution selling or leasing similar products or services under a different trademark in your Territory; and (vii) acquire, be acquired by, merge or affiliate with or engage in any transaction with other businesses (whether or not these businesses are competitive), including competing franchise systems with units operating in your Territory and to convert these units to **Soft Pretzel Factory** businesses.

    1.2.    **Territory.** You will operate your **Factory** at a single location ("Location") within the area specified on the Data Sheet to this Agreement, the terms of which are incorporated herein by reference (the "Territory"). You may not solicit customers or advertise outside your Territory (see Section 7.2 hereof) or deliver any soft pretzel or other products to any destination outside your Territory without our prior written consent.

    1.3.    **Limitation of Grant.**

        1.3.1.    **Additional Stores Within Territory.** This Agreement grants you the right to operate one **Factory** at the Location identified on the Data Sheet to this Agreement. Except as explicitly set forth in this Agreement, you shall not display nor distribute your product at or from any other location, for any commercial purpose, without having first obtained our prior written consent. We have the right to condition our consent upon, among other things, your compliance with our standards and specifications as set forth in the Operations Manual or otherwise in writing.

        1.3.2.    **Wholesale.** It is our current policy to permit you to service wholesale accounts within your designated Territory so long as: (i) the customer is located within your Territory; (ii) the products are delivered to a location within your Territory; and (iii) if the products are purchased for re-sale purposes, the re-sale location is within your Territory. You may not service a wholesale account located outside of your Territory without our prior written consent and, if the account is located within another franchisee's Territory, without the prior written consent of the franchisee. We have the right to revoke our consent and to terminate your right to service any wholesale accounts located outside your Territory at any time and for any reason, including the establishment of another Soft **Pretzel Factory** franchisee whose Territory encompasses the wholesale account. You are not permitted to market or solicit customers outside of your Territory without our prior written consent.

2.    **TERM AND RENEWAL**

    2.1.    **Term.** The term of this Agreement is 10 years and begins on the date we sign this Agreement.

    2.2.    **Renewal.** You have the right to renew this Agreement for 2 additional 5-year periods ("renewal period(s)") provided you have satisfied the following conditions before the expiration of the then-current term (unless another time period is stated):

        2.2.1.    You notify us in writing of your intention to renew the franchise not less than 6 months nor more than 12 months prior to the expiration of the current term;

        2.2.2.    You present sufficient evidence to us of your right to remain in possession of your **Factory** Location for the duration of the renewal term; or, in the event you are unable to maintain possession of the Location, you must have located an approved suitable substitute premises, and have brought such substitute premises into full compliance with our then-current System specifications and standards;

        2.2.3.    You complete to our satisfaction, no later than 90 days prior to the expiration of the then-current term, all maintenance, refurbishing, renovating and remodeling of your **Factory** premises including the equipment, fixtures, furnishings, interior and exterior signs so that the premises reflect the then-current image of a **Soft Pretzel Factory**. However, if, at the time you renew this Agreement there are less than 2 years outstanding on

any nonrenewable lease for the Factory premises, and you certify that you will not be renewing the lease, you will not be required to perform these renovations at your existing Factory but you shall remain obligated to maintain your Factory in accordance with our standards and specifications;

2.2.4.   You are not in default of any provision of this Agreement, or any other agreement between you and us or our affiliates and you have substantially complied with all such agreements during their respective terms;

2.2.5.   You satisfy all monetary obligations you owe to us and/or our affiliates;

2.2.6.   You have consistently operated your Factory in accordance with all existing, federal, state and local laws, regulations and ordinances, and have maintained all permits and licenses necessary for the continued operation of your Factory.

2.2.7.   You execute, at the time of renewal, our then-current form of franchise agreement, the terms of which may vary materially from the terms of this Agreement and may include, without limitation, higher operating and advertising fees;

2.2.8.   You pay to us a renewal fee in an amount equal to the lesser of: (i) 1/4 of our then-current initial franchise fee; or (ii) $5,000.

2.2.9.   You satisfy our then-current training requirements for renewing franchisees at your expense, as of the date of such renewal, if any; and

2.2.10.  You execute a release of any and all claims against us and our affiliates, and our respective officers, directors, agents, and employees, arising out of or related to this Agreement, or any related agreement, on the form we prescribe.  This release will not be inconsistent with any applicable state statute regulating franchising.

3.   **PROPRIETARY MARKS**

3.1.   **Ownership.**  You understand that we own all rights relating to the Proprietary Marks and that, except for your license to use them as specifically and expressly provided in this Agreement, nothing in this Agreement assigns or grants you any right, title or interest in or to the Proprietary Marks.  You agree not to challenge our title or rights in or to the Proprietary Marks, or perform any act for the purpose of or with the effect of jeopardizing or diminishing the value of the Proprietary Marks.  You expressly agree that any and all goodwill associated with the Proprietary Marks and our copyrighted material, including any goodwill that might be deemed to have arisen through your activities, inures directly and exclusively to our benefit.  You must execute from time to time any necessary papers, documents, and assurances to effectuate the intent of this Section and fully cooperate with our or any other System franchisee in securing all necessary and required consents of any state agency or legal authority to use or register any of the Proprietary Marks.

3.2.   **Our Use of the Marks.**  You acknowledge and agree that we and our affiliates may use and register the Proprietary Marks as we deem advisable in our discretion including, without limitation, developing and establishing other business systems using the same or similar Proprietary Marks alone or in conjunction with other marks and granting licenses and/or franchises in connection with such business system without providing you any rights therein.

3.3.   **Protection.**  You must promptly notify us of any infringement of, or challenge to, the Proprietary Marks, and we will in our discretion take such action as we deem appropriate.  We will indemnify and hold you harmless from any suits, proceedings, demands, obligations, actions or claims (including costs and reasonable attorneys' fees) for any alleged infringement under federal or state trademark law arising solely from your use of the Proprietary Marks in accordance with this Agreement, or as otherwise set forth by us in writing, if you have

promptly notified us of such claim. If we undertake the defense or prosecution of any litigation pertaining to any of the Proprietary Marks, you must execute any and all documents and do such acts and things as may, in the opinion of our counsel, be necessary to carry out such defense or prosecution. We have the right to require, in our sole discretion, that you discontinue, modify, or substitute any of the Proprietary Marks in connection with any pending or threatened litigation involving your use of them so long as we indemnifies you for your actual out of pocket costs incurred to effectuate such change.

3.4. **Authorized and Unauthorized Use.** You must use the Proprietary Marks in conjunction with the symbol "TM," "SM," or "R," as applicable, in order to indicate that the Proprietary Marks are protected under federal law. You may not use any of the Proprietary Marks in connection with the offer or sale of any unauthorized products or in any other manner which we have not explicitly authorized in writing.

3.5. **Your Name.** You may not use the Proprietary Marks or any part thereof in your corporate name or limited liability company name, or as part of any Internet domain name. Your corporate name and all fictitious names under which you propose to do business must be approved by us in writing before use. You must use your corporate or limited liability company name either alone or followed by the initials "D/B/A" and the business name "Soft Pretzel Factory." You must promptly register at the office of the county in which your Factory is located, or such other public office as provided for by the laws of the state in which your Factory is located, as doing business under such assumed business name.

3.6. **Modification.** You hereby acknowledge and agree that during the term of this Agreement and all subsequent renewals hereof, we have the exclusive right to add, modify, discontinue and/or substitute the Proprietary Marks or any of them, as we deem appropriate in our sole discretion. You must discontinue use of all Proprietary Marks which we have notified you, in writing, have been modified or discontinued within 10 days of receiving written notification and, at your sole cost and expense, must begin using such additional, modified or substituted Proprietary Marks, as we specify in writing, within 10 days of receiving written notice. Nothing under this Section 3.6 will materially alter your fundamental rights under this Agreement.

4. **CONFIDENTIAL INFORMATION**

You acknowledge and agree that the Operations Manual, our trade secrets and copyrighted materials, methods and other techniques and know-how are our exclusive and confidential property which we provide to you in confidence ("Confidential Information"). You agree to use the Confidential Information only for the purposes and in the manner we authorize in writing, which use will inure exclusively to our benefit. Our trade secrets consist of, without limitation, product preparation and assembly techniques, sales techniques, merchandising and display techniques, **Factory** layout, advertising formats, accounting systems, operations systems, policies, procedures, systems, compilations of information, records, specifications, manuals and other confidential information which we or our affiliates have developed for use in the operation of **Factories**. You may not contest, directly or indirectly, our ownership of our trade secrets, methods or procedures or contest our right to register, use or license others to use any of such trade secrets, methods and procedures. You (including your partners, officers, directors, shareholders, as applicable), your employees, and their respective heirs, successors and assigns, are prohibited from using and/or disclosing any Confidential Information in any manner other than as we permit in writing.

5. **FRANCHISE LOCATION**

5.1. **Factory Location.** You must operate the **Factory** from the single Location and within the Territory identified on the Data Sheet. If, at the time you sign this Agreement, you do not have a designated Location, you must sign the Site Selection Agreement attached to this Agreement as Exhibit "A".

5.2. **Approval of Lease.** We have the right to review, evaluate and approve your proposed lease for the Location ("Lease") prior to execution. We may condition our approval of any proposed Lease on, among other things, your execution and your landlord's execution of a Collateral Assignment of Lease (attached as Exhibit D to this Agreement) which (i) grants us the right, but not the obligation, to assume the Lease upon (a) your default on

the Lease, or (b) termination, transfer or expiration of this Agreement, and (ii) authorizes and requires your landlord to disclose to us, upon our request, sales and other information you have furnished to the landlord. You must deliver an executed copy of the Lease and the Collateral Assignment of Lease to us within 15 days of execution of the Lease. Neither our review of the Lease nor our acceptance of the site you have selected constitutes a representation or guarantee that you will succeed at the selected Location, or an expression of our opinion regarding the terms of the Lease.

      5.3.    **Relocation.**  In the event the Lease term is shorter than the term of this Agreement and the Lease cannot be renewed or extended, or you cannot continue for any other reason to occupy the Location, you must relocate your **Factory** to a mutually acceptable site within your Territory to complete the unexpired portion of the term of this Agreement. You must notify us of your intention to relocate, procure a site acceptable to us within 30 days prior to closing your existing **Factory**, and open the new **Factory** for business within 60 days of closing your existing **Factory**.

6.      **FEES AND COSTS**

      6.1.    **Initial Franchise Fee.**  In consideration of the franchise granted to you, you must pay us an initial franchise fee of $20,000, in full, when you sign this Agreement. Except as set forth in Section 6.1.1 below, the initial franchise fee is nonrefundable and deemed fully earned upon payment in consideration of administrative and other expenses we incur in granting the franchise and for our lost or deferred opportunity to franchise others.

      6.1.1.    **Refund of Initial Franchise Fee.**  You must find an approved location and secure a lease for the **Factory** within 180 days after you sign your Franchise Agreement in accordance with the terms of the Site Selection Addendum to this Agreement. If, despite using your best efforts, you are unable to find a site that meets our standards and specifications within this time period, and we do not grant you an extension, we may terminate the Franchise Agreement, in which case, we will refund $10,000 of the Initial Franchise Fee. We may retain the balance of the Initial Franchise Fee in the amount of $10,000 in consideration of our administrative, brokerage and other expenses we incur in addition to costs for the franchise opportunities lost or deferred as a result of the rights granted to you under the Franchise Agreement. If, however, we find and propose a site to you that meets our standards and specifications, and you reject the site for any reason, and thereafter you are unable to locate a site that meets our standards and specifications within the time period specified in this Agreement and the Site Selection Addendum, the Initial Franchise Fee will be deemed fully earned and non-refundable.

      6.2.    **Royalty Fee.**  You must pay us a weekly Royalty Fee equal to 6% of your "Gross Sales." "Gross Sales" include all revenues you generate from all business conducted at or from the Factory during the preceding reporting period, including amounts received from the sale and delivery of merchandise and tangible property of any nature whatsoever. "Gross Sales" does not include the amount of any tax imposed by any federal, state, municipal or other governmental authority; you agree to pay such amounts as and when due. You must send us weekly Gross Sales reports by the close of business on Friday of each week in the form and manner we specify, including by electronic mail.

      6.3.    **Manner of Payment.**

      6.3.1.    You shall participate in our electronic funds transfer program ("EFT") under which we automatically deduct all weekly Royalty Fees and other payments owed to us under this Agreement from your bank account. Before opening, you shall sign and give to us and your bank, all documents necessary to effectuate this program. You shall immediately notify us of any change in your banking relationship, including changes in account numbers. We reserve the right to require you to submit all payments due to us under this Agreement in any other form or manner we prescribe.

      6.3.2.    All weekly payments required under this section shall be due and deducted from your bank account on Monday of each week on the Gross Sales for the preceding week. The royalty calculations shall be

based on the reports and/or statements required under this Agreement, which must be submitted to us on or before the close of business on Friday of each week.

6.4.    **Insufficient Funds.**    If the funds in your bank account are insufficient to cover any amounts due under this Agreement on the date such funds are due, in addition to the overdue amount, we shall immediately be entitled to debit from your bank account interest on such amount from the date it was due until all past due amounts are paid, at a rate of the lesser of 18% per annum or the maximum rate permitted by law.

6.5.    **Collection Costs, Attorneys' Fees.**    If you are in breach or default of any monetary or nonmonetary material obligation under this Agreement or any related agreement between you and us and/or our affiliates, and we engage an attorney to enforce our rights (whether or not formal judicial proceedings are initiated), you must pay all reasonable attorneys' fees, court costs and litigation expenses we incur. If you institute any legal action to interpret or enforce the terms of this Agreement, and your claim in such action is denied or the action is dismissed, we are entitled to recover our reasonable attorneys' fees, and all other reasonable costs and expenses incurred in defending against same, and to have such an amount awarded as part of the judgment in the proceeding.

6.6.  **Taxes on Payments to Us.**  In the event any taxing authority, wherever located, imposes any future tax, levy or assessment on any payment you make to us, you must, in addition to all payments due to us, pay such tax, levy or assessment.

7.    **ADVERTISING**

Recognizing the value of advertising and promotion, and the importance of the standardization of advertising and promotion programs to the furtherance of the goodwill and public image of the System, the parties agree as follows:

7.1.    **Generally.**    With regard to advertising generally for the Soft Pretzel Factory, you may place or display at the Location (interior and exterior) only the signs, emblems, lettering, logos and displays and advertising materials as we approve in writing from time to time. You must submit to us, at least 10 days prior to your use, samples of all sales, promotional and advertising materials you desire to use, including, but not limited to, yellow pages, newspaper, radio and television advertising, specialty and novelty items, signs, boxes, bags and other packaging which we have not previously approved. Within 10 business days of our receipt of any sample sales promotional material or advertising materials from you, we will notify you in writing of our approval or disapproval of the materials; provided, however, our failure to approve or disapprove the materials within 10 days of receipt will be deemed a disapproval. You may not use any advertising or promotional materials for which we have not given our prior written approval.

7.2.    **Territorial Advertising Restriction.**  You are not permitted to solicit customers and/or advertise outside your Territory, except to the extent that you have received our prior written authorization, which we will not unreasonably withhold. We may condition our authorization upon your agreement to offer System franchisees who are operating System Factories in contiguous territories the opportunity to participate in, and share the expense of, such solicitation and/or advertising. You may not advertise the Factory or any products or services offered by the Factory via the Internet without our prior written consent, which may be given or withheld in our sole discretion.

7.3.    **Grand Opening Advertising.**  Upon execution of this Franchise Agreement, you must provide us with a payment of $2,500. We will return this amount to you during the 30-day period prior to your Factory's opening. You must spend at a minimum this amount of $2,500 to promote the grand opening of your Factory during the 30 day period prior to the opening of your Factory and the 90 day period following the opening of your Factory. ("Grand Opening Advertising Requirement") You must spend the Grand Opening Advertising Requirement in the manner we prescribe in the Operations Manual or otherwise in writing. All advertising must be approved by us in writing prior to publication, as described in Section 7.1, above.

7.4.     **System Wide Marketing Fund.** We have established a "System Wide Marketing Fund" for the common benefit of System franchisees (the "Fund"). Currently, you must contribute 1% of your weekly Gross Sales to the Fund, however, we have the right to increase your contribution requirement to 2% of your weekly Gross Sales ("Fund Contribution").

7.4.1.     The Fund is administered by us and outside sources and is used, in our sole discretion, to develop, produce, and distribute advertising materials, print ads and public relations which promote, in our sole judgment, the services offered by System franchisees. We will make a good faith effort to expend the Funds in the general best interests of the System on a System wide basis. We are not required, under the Franchise Agreement, to spend any amount of Fund contributions in your Territory and not all System franchisees will benefit directly or on a pro rata basis from our expenditures.

7.4.2.     We have the right to reimbursement from Fund Contributions for all reasonable costs and overhead, if any, as we may incur in activities which are reasonably related to directing and implementing the Fund, including costs of personnel for creating and implementing advertising, promotional and marketing programs. There is no requirement that the Fund be audited. Upon your written request, we will provide you with an unaudited accounting of Fund expenditures. Franchisees participating in the Fund will be required to contribute to the Fund at uniform rates. The advertising materials are produced by us and outside sources.

7.4.3.     Although we anticipate that all Fund Contributions will be spent in the fiscal year they accrue, if we do not spend all Fund Contributions by the end of each fiscal year, the remaining amounts may be carried over to be expended during the next fiscal year. We will not receive payments (other than reimbursement for expenses) for administering the Fund. We do not anticipate that any part of fund contributions will be used for advertising that is principally a solicitation for the sale of additional franchises, but we reserve the right to include a notation in any advertisement indicating "Franchises Available."

7.5.     **Local Advertising.** In addition to the System Wide Marketing Fund contributions described in Note 2 above, you must spend, at a minimum, an amount up to 1% of your Gross Sales each month on local advertising in accordance with our standards and specifications ("Local Advertising Requirement"). We may require you to expend an additional monthly amount on local advertising, but in no event will your total System Wide Marketing Fund contributions and Local Advertising Requirement exceed 3% of your Gross Sales. Notwithstanding the foregoing, during the term of this Agreement, we have the right to increase your minimum Local Advertising Requirement one-time each calendar year by an amount not to exceed the percentage increase in the Consumer Price Index, published by the Bureau of Labor Statistics of the United States Department of Labor for urban wage earners and clerical workers for all items for the Philadelphia area or any successor ("CPI"). We will calculate any increase in the Local Advertising Requirement by multiplying your then-current local advertising requirement by a fraction, the numerator of which is the CPI on the anniversary date of this Agreement for the current year and the denominator of which is the CPI on the prior anniversary date on which the Local Advertising Requirement was last adjusted, or the date you sign this Agreement, as applicable. We are under no obligation to reduce your Local Advertising Requirement if there is a decrease in the CPI. You must spend the Local Advertisement Requirement as we prescribe in the Operations Manual or otherwise in writing, which may include, without limitation, requirements for placing a certain number and/or type(s) of media advertisements. You acknowledge and agree that your local advertising obligation must be expended regardless of the amount(s) spent by other System franchisees on local advertising. You may spend any additional sums you wish on local advertising. You must use only such advertising and promotional materials as have been previously approved by us. You must submit to us on a quarterly basis within 15 days following the end of each quarter evidence of your local advertising expenditures during the preceding quarter.

8.     **SERVICES PROVIDED BY US**

8.1.     **Site Selection.** We or our designee will review proposed sites for the location of your Soft Pretzel Factory. We will use our best efforts to approve or disapprove your proposed site within 30 days from the date you submit your proposal Final site selection must be acceptable to both you and us. Neither our, nor our

designee's review and/or acceptance of a site constitute a representation or guarantee that your **Factory** location will be successful.

8.2. **Factory Layout.** You are responsible for the construction and development of the **Factory**. Within 30 days from the date you execute this Agreement, we will provide to you the most current specifications for the design and general layout of your **Factory**.

8.3. **Training.**

8.3.1. We will provide initial tuition-free training for 2 persons including you (if you are an individual or up to 2 of your principals or partners if you are a corporation or partnership). We will train additional persons at a tuition rate of $1,000 per person so long as such person(s) attends training contemporaneously with you. You, if you are an individual (or one of your partners or shareholders if you are a partnership or corporation), must attend and complete the initial training program to our satisfaction. Notwithstanding this provision, at all times during business hours, your **Factory** must be supervised on-site by at least 1 individual who has successfully completed our initial training program.

8.3.2. Our training program is currently conducted on an as-needed basis. The initial training program will last for 3 to 5 days at our training center located at 7366 Frankford Avenue in Philadelphia, Pennsylvania or at another location designated by us. In addition, the initial training will include 3 to 5 days of training at your **Factory** location. Depending upon our reasonable availability and at our reasonable discretion, your initial training may also consist of 2 days of training after you have begun operations. You must pay all expenses incurred during training including travel, lodging and dining expenses and your employees' salaries. We will provide you all training materials at no additional charge.

8.3.3. We reserve the right to offer, from time to time, additional training programs and/or refresher courses to you, your manager and/or your employees. You are not obligated to attend such additional training. You are responsible for the expenses of you and your manager, including transportation to and from the training site and lodging, meals, and salaries during training. The additional training programs and refresher courses will be at our then-current tuition for such training.

8.4. **Additional On-Site Assistance.** We, or our designee, will also provide periodic assistance after you open for business, as we deem appropriate and advisable. Subject to availability of personnel and at your reasonable request, we will make available corporate personnel to provide additional on-site or telephonic assistance (at our sole discretion) beyond the on-site initial opening assistance.

8.5. **Continuing Consultation and Advice.** In addition to the assistance rendered to you prior to opening and in connection with the grand opening, we will provide continuing consultation and advice as we deem advisable regarding merchandising and retailing, display, design, **Factory** layout, sales techniques, personnel development and other business, operational and advertising matters which directly relate to your **Soft Pretzel Factory**. Such assistance will be provided, at our option, by telephone, facsimile, periodically through on-site assistance by appropriate personnel, and/or other methods.

8.6. **Operations Manual.** We will loan you one copy of our Operations Manual containing mandatory and suggested standards, operating procedures and rules, which we prescribe, as well as information relating to your obligations under this Agreement. You must operate your **Factory** in strict compliance with the Operations Manual, as it may be reasonably modified from time to time. The Operations Manual shall be confidential and shall, at all times, remain our property. You may not make any disclosure, duplication or other unauthorized use of any portion of the Operations Manual. The provisions of the Operations Manual constitute provisions of this Agreement as if fully set forth herein. You must ensure that your copy of the Operations Manual is current and up-to-date. If there is a dispute relative to the contents of the Operations Manual, the master copy which we maintain at our principal office will control.

8.7.    **Annual Conference.**  We may, in our discretion, hold an Annual Conference at a location to be selected by us.  We shall determine the topics and agenda for such conference to serve the purpose among other things, of updating franchisees on new developments affecting franchisees, and exchanging information between franchisees and our personnel regarding Soft Pretzel Factory operations and programs.  All expenses, including you and your employee's transportation to and from the Annual Conference, and lodging, meals, and salaries during the Annual Conference, are your sole responsibility

9.    **OBLIGATIONS OF FRANCHISEE**

9.1.    **Training.**  You, or at least one of your principals (if you are a partnership, corporation or limited liability company), must successfully complete our initial training program as described in Section 8.3 of this Agreement.

9.2.    **Factory Layout and Construction.**  Prior to commencing construction, you must comply, to our satisfaction, with the following:

9.2.1.    At our request, you must engage an approved architect and engineer to prepare a site layout and working drawings for construction of your Factory, and submit to us a statement identifying the architect and engineer, describing the qualifications of each.

9.2.2.    At our request, you must also submit to us for approval, a site layout and working drawings adopting our then-current plans and specifications for constructing, equipping, fixturizing and furnishing the Factory at the approved site in compliance with all applicable laws, regulations and ordinances (the "Plans").  Upon approval by us, the Plans must not be materially changed or modified without our prior written consent; a change is material if it (a) affects the structural integrity of the Factory, (b) changes the appearance, location, size or quality of the Factory, (c) affects the appearance, furnishings or fixturizing of the Factory, or (d) causes the Factory to deviate from the standards then-established for the System.

9.2.3.    You must employ an approved general contractor to construct the Factory and complete all improvements and you must submit to us a statement identifying the general contractor and describing its qualifications and financial responsibility.

9.2.4.    You must obtain all permits, certificates and licenses required for construction of the Factory, including, without limitation, those required by applicable zoning, access, utility, sign, building, health, safety, environmental laws, ordinances, rules or regulations.

9.3.    **Opening for Business.**  You must commence operations of your Factory within 180 days from the date you sign this Agreement.

9.4.    **Required Purchases.**

9.4.1.    **Compliance with Standards and Specifications.**  You acknowledge and agree that your obligations under this Agreement and the requirements of our Operations Manual are reasonable, necessary and desirable for the operation of your Factory and the Franchise System.  We will provide you with standards and specifications for display and other equipment, fixtures, furniture, exterior and interior signs and decorating, required for the Soft Pretzel Factory and standards and specifications for supplies and inventory.  Specifications may include minimum standards for performance, warranties, design and appearance and local zoning, sign and other restrictions.  You agree to adhere to our standards and specifications as set forth in this Agreement and the Operations Manual and any revisions or amendments to the Operations Manual.  You must use signs, furnishings, supplies, fixtures, equipment and inventory which comply with our then-current standards and specifications (including, but not limited to, specifications of product and service quality and uniformity).  We have the right to change the standards and specifications applicable to the operation of Soft Pretzel Factory.  You acknowledge you

may incur an increased cost to comply with such changes and agree to incur such costs as we reasonably deem necessary.

9.4.2. **Designated and Approved Suppliers.** We reserve the right to require you to purchase certain signs, furnishings, supplies, fixtures, equipment and inventory from approved suppliers identified in the Operations Manual or otherwise in writing. We shall have the right to require you to purchase certain items from us, our affiliates, an unaffiliated designated supplier, or from an approved supplier.

9.4.3. **Supplier Approval Process.** In the event you wish to purchase any item, including inventory, from an unapproved supplier, you must provide us the name, address and telephone number of the proposed supplier, a description of the item you wish to purchase, and purchase price of the item, if known. At our request, you must provide to us, for testing purposes, a sample of the item you wish to purchase. If we incur any costs in connection with testing a particular product or evaluating an unapproved supplier at your request, you or the supplier must reimburse our reasonable testing costs, regardless of whether we subsequently approve the item or supplier. We may revoke our approval of particular products or suppliers when we determine, in our sole discretion, that such products or suppliers no longer meet our standards. Upon receipt of written notice of such revocation, you must cease purchasing products from such supplier. You must use products purchased from approved suppliers solely in connection with the operation of your Factory and not for any competitive business purpose.

9.4.4. **System Suppliers.** You acknowledge that we may establish business relationships, from time to time, with suppliers who may produce, among other things, certain inventory items in accordance with our proprietary standards and specifications; or unique inventory items which we have authorized and designated for use by System franchisees ("System Suppliers"). You recognize that such products are essential to the operation of the franchised business and to the franchise System generally; and if you fail to pay System Suppliers, you will jeopardize your ability to receive such product(s). You also recognize that you will jeopardize the System's relationship with System Suppliers, which may result in other System franchisees' inability to obtain product(s); or to obtain product(s) only on less favorable credit terms.

9.5. **Authorized Products.** You must offer and sell all products that we prescribe, and only those products that we prescribe. You must not sell any product or render any services in connection with your Soft Pretzel Factory which do not meet our standards and specifications. You must not have or use, nor permit the presence or use of, video game machines or vending machines or any like coin-operated, or electronic device or machine, other than a pay-telephone approved by us, upon the Factory Premises.

9.6. **Image.** The System was developed to distinguish the services offered by Soft Pretzel Factories from other soft pretzel stores, retail gift shops, and competing chains. Therefore, you acknowledge that we require you to offer products containing only the freshest ingredients, to present products to the customers in the manner we prescribe, to provide quality customer service and to otherwise conduct the Factory in such a manner which will serve to emulate and enhance the image intended by us for the System. You further acknowledge and agree that each aspect of the System is important not only to you but also to us, our affiliates and other System franchisees. Thus, it is important in order to maintain the highest operating standards and to achieve system wide uniformity in order to increase the demand for the services rendered by our franchisees, and our affiliates. You agree to comply with our standards, specifications and requirements in order to uniformly convey the distinctive image of a Soft Pretzel Factory.

9.7. **Computer Software and Hardware.** You must purchase and use any and all computer software programs ("Software") and all computer hardware necessary for the efficient operation of the Software which we develop and/or designate for use by the System only from our approved suppliers. You must use our proprietary software program in the operation of your Factory according to Operations Manual and our standards and specifications. We have the right to independently access all information collected or compiled by or in accordance with your use of the Software at any time without first notifying you. You must also obtain cable internet access if it is available in your Territory. We reserve the right to require you to update or upgrade your computer software and hardware components, as we deem necessary, but not more than 3 times per year.

9.8.   **Intranet.**   We may in the future develop an intranet that allows you and certain employees to: (i) view and print portions of the confidential Operations Manual; (ii) download approved local advertising materials; and (iii) communicate with us and other franchisees. If developed, we have the right to require you to use our intranet in the operation of your **Factory** according to our terms and conditions.

9.9.   **Personal Supervision.** You or a manager approved by us in writing, or one of your principals, (if you are a partnership, corporation or limited liability company) must personally supervise the day-to-day operations of the **Factory** and must use your best efforts in the operation of the **Factory**.

9.10.   **Operations.**

9.10.1.   You must operate your **Factory** for at least those hours and days we specify in the Operations Manual. At a minimum, your **Factory** must remain open for 12 hours each day and must be open between the hours of 5 AM and 5 PM.

9.10.2.   You must maintain the **Factory** in a clean, safe and attractive manner, and in accordance with all applicable requirements of law and the Operations Manual. You and your employees must give prompt, courteous and efficient service to the public and otherwise operate the **Factory** so as to preserve, maintain and enhance the reputation and goodwill of the System.

9.10.3.   You must at all times maintain such working capital as may be reasonably necessary to enable you to properly and fully carry out and perform all of your duties, obligations and responsibilities hereunder and to operate the business in a businesslike, proper and efficient manner.

9.10.4.   You must at all times maintain sufficient levels of inventory to adequately meet consumer demand.

9.10.5.   You must employ a sufficient number of qualified, competent personnel as required by us from time to time.

9.11.   **Books and Records.** You must maintain accurate business records, reports, accounts, books and data relating to the operation of your **Factory**. We, or our designee, have the right, at any time during normal business hours, to inspect and/or audit your business records, to determine whether you are current with suppliers and/or otherwise are operating in compliance with the terms of this Agreement or the Operations Manual. If any audit reveals that you have understated Gross Sales by more than 5%, or if you have failed to submit timely reports and/or remittances to us for any 2 reporting periods in any 12-month period, in addition to all other rights and remedies we may have against you, you must pay the reasonable cost of such audit and/or inspection, including the cost of outside auditors and attorneys if we incur such costs, together with amounts due for operating, advertising and other fees as a result of such understated Gross Sales, and interest from the date when such amounts due should have been submitted.

9.12.   **Financial Records and Reports.** You must maintain for at least 3 fiscal years from their preparation complete financial records for the operation of your **Factory** in accordance with generally accepted accounting principles and must provide us, at our request, with (i) a weekly sales report signed by you and in the form we specify for Gross Sales and Net Sales during the preceding calendar week indicating all monies received during the relevant period, as well as customer counts and average sales, and such other additional information which we deem necessary to properly evaluate your progress, which shall accompany your Operating and advertising fees; (ii) annual financial reports and operating statements in the form we specify, prepared by a certified public accountant or state licensed public accountant, within 90 days after the close of each of your fiscal years; (iii) state and local sales tax returns or reports and federal, state and local income tax returns for each year in which your **Factory** is operated, within 30 days after their timely completion; and (iv) such other reports as we may from time to time require, in the form and at the time we prescribe. To assist you in recording and keeping accurate and

detailed financial records for reports and tax returns, we, at our discretion, may specify the form in which the business records are to be maintained, provide a uniform set of business records for you to use, and specify the type of cash register or other equipment to be used in connection with the Factory.

9.13.    **Applicable Laws.** You must comply with all applicable federal, state and local laws, ordinances and regulations regarding the operation of your **Factory**, including, without limitation, labeling and packaging regulations and public health laws.

9.14.    **Independent Status.** All stationery, business cards and contractual agreements which you enter into must contain your corporate or fictitious name. You must post a notice in a conspicuous place designated by us, that you operate your **Factory** as an independently owned and operated franchise. At our request, you must prominently display a "Franchises Available" sign in the form and in the place we prescribe.

9.15.    **Inspection.** During normal business hours and without prior notice, we have the right to enter upon your **Factory** premises, inspect your records, interview your employees and customers and observe the manner in which you operate your **Factory**.

9.16.    **Changes to the System.** We have the right, in our sole discretion, to change the standards and specifications applicable to operation of the franchised business from time to time, including standards and specifications for products, supplies, signs, fixtures, furnishings, inventory and equipment, by written notice to you or through changes in the Operations Manual. You recognize that you may incur an increased cost to comply with such changes, and you agree to accept and implement such changes at your own expense as if they were part of the Franchise System when this Agreement was executed, including discontinuing, modifying, or substituting any of the Proprietary Marks; provided, however, that any such change must not materially alter your fundamental rights under this Agreement.

9.17.    **Pending Actions.** You must notify us, in writing, within 5 days of the commencement of any action, suit or proceeding and of the issuance of any order, suit or proceeding of any court, agency or other governmental instrumentality which may adversely affect the operation or financial condition of you or your **Factory**.

10.    **ACKNOWLEDGMENTS OF FRANCHISEE.**

10.1.    **Independent Contractor Status.** You are an independent contractor responsible for full control over the internal management and daily operation of your **Factory**, and neither we nor you are the agent, principal, partner, employee, employer or joint venturer of the other. You must not act or represent yourself, directly or by implication, as our agent, partner, employee or joint venturer, nor may you incur any obligation on our behalf or in our name.

10.2.    **Indemnification.** You must defend, indemnify and hold us harmless from all fines, suits, proceedings, claims, demands, obligations or actions of any kind (including costs and reasonable attorneys' fees) arising in whole or in part from the operation of your **Factory**, including your advertising, except as otherwise provided in this Agreement.

10.3.    **Payment of Debts.** You understand that you alone are responsible for: (i) selecting, retaining and paying your employees, suppliers and taxing authorities; (ii) the payment of all invoices for the purchase of goods for use in the **Factory**; and (iii) determining whether, and on what terms, to obtain any financing or credit which you deem advisable or necessary to operate the **Factory**.

10.4.    **Notice of Potential Profit.** You acknowledge and agree that we may receive a reasonable profit on all items you purchase from us, our affiliates or a third party supplier. We and/or our affiliates may from time to time receive consideration from suppliers with respect to sales of signs, furnishings, supplies, fixtures, equipment and inventory sold to you or in consideration of rights licensed to such persons. You agree that we and/or our affiliates are entitled to such profits and/or consideration.

10.5. **Non-competition.**

10.5.1. **During the Term of This Agreement.** During the term of this Agreement, neither you, your principals, nor any member of the immediate family of you or your principals may, directly or indirectly, for themselves or through, on behalf of, or in conjunction with any other person, partnership or corporation:

10.5.1.1. Own, maintain, engage in, be employed by, lend money to, extend credit to or have any interest in any other retail store, delivery service or other business offering soft pretzel products similar to those offered under the System; provided, however, that this Section does not apply to your operation of any other **Soft Pretzel Factory**; or

10.5.1.2. Solicit any of our employees, our affiliate's employees or any other System franchisee to discontinue employment.

10.5.2. **After the Term of This Agreement.** For a period of 2 years after the expiration, transfer or termination of this Agreement, regardless of the cause, neither you, your principals, nor any member of the immediate family of you or your principals may, directly or indirectly, for themselves or through, on behalf of, or in conjunction with any other person, partnership or corporation:

10.5.2.1. Own, maintain, engage in, be employed by, or have any interest in any other business which operates or licenses any other retail store , delivery service or other business similar to those offered under the System; (i) at the Factory; (ii) within the Territory; or (iii) within a radius of 10 miles of (a) the perimeter of the Territory being granted hereunder or (b) any other **Soft Pretzel Factory** Territory licensed by us as of the date of expiration or termination of this Agreement; or

10.5.2.2. Solicit business from customers of your former **Soft Pretzel Factory** or contact any of our suppliers for any competitive business purpose nor solicit any of our employees, our affiliate or any other System franchisee to discontinue employment; and

10.5.2.3. For a period of 2 years after the expiration and nonrenewal, transfer or termination of this Agreement, regardless of the cause, neither you, your principals, nor any member of the immediate family of you or your principals may, directly or indirectly, for themselves or through, on behalf of, or in conjunction with any other person, partnership or corporation enter into any business competing in whole or in part with us granting franchises or licenses.

10.5.3. **Intent and Enforcement.** It is the parties' intent that the provisions of this Section 10.5 be judicially enforced to the fullest extent permissible under applicable law. Accordingly, the parties agree that any reduction in scope or modification of any part of the noncompetition provisions contained herein shall not render any other part unenforceable. In the event of the actual or threatened breach of this Section 10.5 by you, any of your principals, or any member of the immediate family of you or your principals, we shall be entitled to an injunction restraining such person from any such actual or threatened breach. You agree that in the event of the actual or threatened breach of this Section 10.5, the harm to us will be irreparable and we will have no adequate remedy at law to prevent such harm. You acknowledge and agree on your own behalf and on behalf of the persons who are liable under this Section 10.5 that each has previously worked or been gainfully employed in other careers and that the provisions of this Section 10.5 in no way prevent any such person from earning a living. You further acknowledge and agree that the time limitation of this Section 10.5 shall be tolled during any default under this Section.

10.5.4. **Employees.** You must require your principals, employees and members of their immediate families who have access to our Confidential Information to execute a noncompetition agreement containing provisions similar to those set forth above as we, in our sole discretion, prescribes.

company owning an interest of 10% or more will be required to personally guarantee your obligations under this Agreement. A transfer pursuant to (i) and (ii) above will not be subject to our right of first refusal as set forth in Section 11.3.1.

11.3.1. **Right of First Refusal.** If you propose to transfer this Agreement to any third party (other than a corporation as set forth in Section 11.4 hereof and except as otherwise set forth in Section 11.3) in connection with a bona fide offer from such third party, you must first offer to sell such interest to us on the same terms and conditions as offered by such third party. You must obtain from the third party and provide to us a statement in writing, signed by the third party and you, of the terms of the offer ("Letter of Intent"). If we elect not to accept the offer within a 30-day period, you have a period not to exceed 60 days to complete the transfer described in the Letter of Intent subject to the conditions for approval set forth in Section 11.3.2 hereof. You may affect no other sale or transfer of your interest in this Agreement without first complying with this Section 11. Any material change in the terms of the offer, will be deemed a new proposal subject to our right of first refusal. So long as you have obtained our prior written consent, which will not be unreasonably withheld, a transfer to an existing principal, or a transfer as a result of the death, disability or incapacity of a principal, in accordance with the provisions set forth in Section 11.2 of this Agreement is not subject to our right of first refusal.

11.3.2. **Conditions for Approval.** We may condition our approval of any proposed sale or transfer of the franchised business or of your interest in this Agreement upon satisfaction of the following requirements:

11.3.2.1. You must satisfy all of your accrued monetary obligations to us and our affiliates;

11.3.2.2. You must cure all existing defaults under this Agreement, or any other agreement between you and us or our affiliates, within the period permitted for cure and have substantially complied with such agreements during their respective terms;

11.3.2.3. You and your principals (if you are a partnership, corporation or limited liability company) must execute a general release under seal, in a form satisfactory to us of any and all claims against us and our affiliates and our officers, directors, shareholders and employees, in their corporate and individual capacities; provided, however, the release will not be inconsistent with any applicable state statute regulating franchising;

11.3.2.4. You or the transferee must provide us with a copy of the executed purchase agreement relating to the proposed transfer with all supporting documents and schedules, including transferee's assumption of and agreement to faithfully perform all of your obligations under this Agreement;

11.3.2.5. The transferee must demonstrate to our satisfaction that it meets our educational, managerial and business standards; possesses a good moral character, business reputation and credit rating; has the aptitude and ability to conduct the business to be transferred; and has adequate financial resources and capital to meet the performance obligations under this Agreement; however, the transferee may not be in the same business as we either as licensor, franchisor, independent operator or licensee of any other Factory, chain or network which is similar in nature or in competition with us, except that the transferee may be an existing System franchisee;

11.3.2.6. The transferee must execute our then-current franchise agreement for the unexpired term of this Agreement;

11.3.2.7. You or the transferee must pay us a transfer fee of $5,000;

11.3.2.8. The transferee must satisfactorily complete our training program at the transferee's expense within the time frame we specify; and

11.3.2.9. You (and your principals if you are a partnership, corporation or limited liability company), and the members of their respective families must comply with the post-termination provisions of this Agreement.

11.4. **Transfer to a Corporation or Limited Liability Company.** You may assign your rights under this Agreement to a corporation or limited liability company, provided:

11.4.1. The corporation or limited liability company is newly organized and its activities are confined to operating the franchised business;

11.4.2. You are, and at all times remain, the owner of 90% of the outstanding shares of the corporation or at least a 90% ownership interest in the limited liability company;

11.4.3. The corporation or limited liability company agrees in writing to assume all of your obligations hereunder pursuant to the Assumption and Assignment Agreement attached as Exhibit "F" to this Agreement; and

11.4.4. All stockholders of the corporation with a 10% ownership or greater in the corporation, or all members and managers of the limited liability company, as applicable, personally guarantee prompt payment and performance by the corporation of all of its obligations to us and/or its affiliates, under this Agreement and any other agreement between you and us and/or our affiliates and execute a noncompetition agreement as set forth in Section 10.5 hereof.

A transfer under this Section 11.4 is not subject to the transfer fee required under Section 11.3.2.7.

11.5. **Transfer by Us.** We have the right to sell, transfer, assign and/or encumber all or any part of our interest in this Agreement and our shareholders have the right to sell, transfer, assign and/or encumber all or any part of their interest in Soft Pretzel Franchise Systems, Inc.

## 12. BREACH AND TERMINATION

12.1. **Termination by Us.** We have the right to terminate this Agreement under the following circumstances:

12.1.1. **With Cause and Without Opportunity to Cure.** We have the right to terminate this Agreement without giving you advance notice or an opportunity to cure for any of the following breaches or defaults:

12.1.1.1. **Criminal Acts.** If you (or any of your principals if you are a partnership, corporation, or limited liability company), are convicted of or plead guilty or no contest to a felony or take part in any criminal misconduct relevant to the operation of your Factory.

12.1.1.2. **Fraud.** If you (or any of your principals if you are a partnership, corporation, or limited liability company) commit any fraud in the operation of your Factory.

12.1.1.3. **Misrepresentation.** If you (or any of your principals if you are a partnership, corporation, or limited liability company) make any misrepresentation or omission in connection with your franchise application, including but not limited to any financial misrepresentation.

12.1.1.4. **Repeated Breaches.** If we send you 2 or more written notices to cure pursuant to Sections 12.2.2 or 12.2.3 hereof in any 12-month period, regardless of whether or not such defaults have been cured.

**12.1.1.5.** **Unauthorized Inventory/ Products.** If you knowingly sell any unapproved product or purchase any inventory or product, for which we have designated or approved suppliers, from an unapproved supplier.

**12.1.1.6.** **Breach of Other Agreements.** If you (or any of your principals if you are a partnership, corporation, or limited liability company) materially breach any other agreement with us or any of our affiliates, or threaten any material breach of any such agreement or any lease for the Factory premises, and do not cure the breach within any permitted period for cure.

**12.1.1.7.** **Trademark and Trade Secret Violation.** If you materially violate any provision hereof pertaining to Proprietary Marks or Confidential Information or misuse the Proprietary Marks or Confidential Information licensed hereunder.

**12.1.1.8.** **Violation of Health Code.** If you violate any health, safety or sanitation law, ordinance or regulation or operate the Factory in a manner that presents a health or safety hazard to customers, or the general public and fail to cure the violation within 48 hours. We shall have the right to require you to close the Factory until any such violation has been completely cured.

**12.1.1.9.** **Breach of Lease.** If you breach any provision of your lease or sublease for the premises of the Factory, and such breach results in the termination of your lease.

**12.1.1.10.** **Violation of In-term Restrictive Covenant.** If you violate the in-term restrictive covenant contained in Section 10.5.

**12.1.1.11.** **Voluntary Bankruptcy.** If you or your principals (if you are a corporation, partnership or limited liability company) make an assignment for the benefit of creditors, file a voluntary petition in bankruptcy, are adjudicated bankrupt or insolvent, file or acquiesce in the filing of a petition seeking reorganization or arrangement under any federal or state bankruptcy or insolvency law, or consent to or acquiesce in the appointment of a trustee or receiver for you or for the franchised business.

**12.1.1.12.** **Involuntary Bankruptcy.** If proceedings are commenced to have you or any of your principals (if you are a corporation, partnership or limited liability company) adjudicated bankrupt or to seek your reorganization under any state or federal bankruptcy or insolvency law, and such proceedings are not dismissed within 60 days, or a trustee or receiver is appointed for you or for the franchised business without your consent, and the appointment is not vacated within 60 days.

**12.1.1.13.** **Liens.** If a levy or writ of attachment or execution or any other lien is placed against you or any of your principals (if you are a corporation, partnership or limited liability company) or your guarantor under Section 17 hereof, or any of their respective assets, which is not released or bonded against within 30 days.

**12.1.1.14.** **Insolvency.** If you (or any of your principals if you are a corporation, partnership or limited liability company) are insolvent.

**12.1.1.15.** **Abandonment.** If you voluntarily or otherwise abandon the franchised business. The term "abandon" means any conduct which indicates a desire or intent to discontinue the franchised business in accordance with the terms of this Agreement and will apply in any event if you fail to operate the Factory as a Soft Pretzel Factory for a period of 2 or more consecutive days without our prior written approval.

**12.1.2. With Cause After 15-Day Notice to Cure.** We have the right to terminate this Agreement upon 15 days' written notice to you, if any of the following defaults remain uncured after expiration of the 15-day cure period:

12.1.2.1.      **Nonpayment.**   You fail to pay as and when due any sums you owe us or any of our affiliates under this Agreement, or any of your suppliers, or under any other agreement by which you have become obligated to pay any sums to us or any of our affiliates.

12.1.2.2.      **Failure to Complete Training.**   If you fail to complete initial training as provided in Section 9.1.

12.1.2.3.      **Failure to Open.**  If you fail to commence operations of your Factory within 180 days of executing this Agreement.

12.1.2.4.      **Failure to Procure a Site.**  If you fail to locate a mutually acceptable site.

12.1.2.5.      **Interruption of Service.**  If you fail to maintain the prescribed hours of operation at the Factory.

12.1.2.6.      **Failure to Participate in the On-Premises Supervision of Your Franchised Business.**  If you (or one of your principals if you are a partnership, corporation or limited liability company), or your approved manager, fail to personally participate in the on-premises day-to-day supervision of the franchised business.

12.1.2.7.      **Quality Control.**  If you fail to maintain the strict quality controls reasonably required by this Agreement and/or the Operations Manual.

12.1.2.8.      **Conduct Reflecting Adversely on System.**  If you (or your principals if you are a corporation, partnership or limited liability company), or your approved manager, conduct yourself in a manner that, although not criminal, reflects adversely on the System, the Proprietary Marks, the products offered through the System, or our officers or directors.

12.1.2.9.      **Unauthorized Transfer.**  If you surrender or transfer control of the operation of the Factory, make any unauthorized direct or indirect assignment of the franchise or an ownership interest in franchise, or you fail or refuse to assign the franchise or the interest in a deceased or disabled controlling owner thereof, as required in this Agreement.

12.1.3.   **With Cause After 30-Day Notice to Cure.**   We have the right to terminate this Agreement upon 30 days' written notice to you, if any of the following defaults remain uncured after expiration of the 30-day cure period:

12.1.3.1.      **Failure to Perform.**  You fail to perform or comply with any one or more of the terms or conditions of this Agreement or any ancillary agreements between you and us or our affiliates.

12.1.3.2.      **Unapproved Purchases.**  You order or purchase supplies, signs, furnishings, fixtures, equipment or inventory from a supplier who is not then-currently approved by us.

12.2.     **Cure.**  If you fail to cure the alleged breach within the applicable period of time set forth in Section 12.2, then this Agreement must be considered terminated as of the date stated in the default notice, the last day of the cure period.  For purposes of this Agreement, your alleged breach of this Agreement will be deemed cured if both you and we agree in writing that the alleged breach has been corrected.

12.3.     **Our Right to Operate the Factory in the Event of Default.**  In addition to our right to terminate this Agreement, and not in lieu of such right, or any other rights we have against you, upon a failure to cure any default within the applicable cure period (if any), we may enter upon the premises of the Factory and exercise complete authority with respect to the operation of the Factory until such time as we determine that the default has

been cured, and you are otherwise in compliance with this Agreement. You agree to pay us a service fee not less than $200 per day, in addition to all travel expenses reasonably incurred by our representative(s), for so long as the default exists. In the event that we undertake to operate the **Factory** pursuant to this Section 12.4, you agree to indemnify and hold us (and our representative(s)) harmless from and against any fines, claims, suits or proceedings resulting from our operation of the **Factory**.

12.4.   **Nonwaiver.**   Our delay in exercising or failing to exercise any right or remedy under this Agreement or our acceptance of any late or partial payment due hereunder will not constitute a waiver of any of our rights or remedies against you.

13.   **RIGHTS AND DUTIES UPON TERMINATION OR EXPIRATION**

13.1.   **Your Obligations.**   Upon termination of this Agreement, regardless of the cause, and upon expiration and nonrenewal or transfer of this Agreement, you must:

13.1.1.   Cease immediately all operations under this Agreement;

13.1.2.   Pay immediately to us all unpaid fees and pay us and our affiliates all other monies owed;

13.1.3.   Discontinue immediately the use of the Proprietary Marks;

13.1.4.   Immediately return the Operations Manual to us and all other manuals and Confidential Information we loaned to you and immediately cease to use the Confidential Information;

13.1.5.   Immediately return all proprietary software, if any, to us or our designee.

13.1.6.   Immediately cease using all telephone numbers and listings and domain names, as applicable, used in connection with the operation of the franchised business and direct the transfer of all telephone numbers and domain names to us or our designee, or, if we so direct, to disconnect the numbers or cancel the domain name(s);

13.1.7.   Immediately vacate the Premises if we exercises our rights pursuant to the Collateral Assignment of Lease attached as Exhibit D;

13.1.8.   Promptly surrender all stationery, printed materials, signs, advertising materials and other items containing the Proprietary Marks as we direct and all items which are a part of the trade dress of the System;

13.1.9.   Cease to hold yourself out as a System franchisee;

13.1.10.   Take such action as must be necessary to amend or cancel any assumed name, business name or equivalent registration which contains any trade name or other Proprietary Mark licensed by us and furnish us with evidence to our satisfaction of your compliance with this obligation within 30 calendar days after the termination, expiration or transfer of this Agreement;

13.1.11.   Permit us to make final inspection of your financial records, books, and other accounting records within 6 months of the effective date of termination, expiration, or transfer;

13.1.12.   Comply with the post-termination covenants set forth in Section 10.5 hereof, all of which must survive the transfer, termination or expiration of this Agreement.

13.2.   **Power of Attorney.**   We are hereby irrevocably appointed as your attorney-in-fact to execute in your name and on your behalf all documents necessary to discontinue your use of the Proprietary Marks and the Confidential Information.

14.    **OPTION TO PURCHASE PERSONAL PROPERTY.**

14.1.    **Option.** Upon the termination or expiration of this Agreement, we, or our designee shall also have the option, but not the obligation, to purchase any equipment, including the pretzel stringing equipment, and any other personal property used in connection with operation of your Business by providing you written notice of our election within 15 days after such termination or expiration and paying you the book value for such personal property within 60 days of such notice. For purposes of this paragraph, "book value" means the amount you actually paid for the personal property less depreciation (calculated by using the straight-line depreciation method on a ten year depreciation schedule irrespective of the depreciation method or schedule you use for accounting purposes). Notwithstanding the foregoing, to the extent that we exercise our right to purchase any personal property that is subject to a lease or finance agreement, the purchase price of such personal property shall equal the amount of your remaining obligations under the lease or finance agreement, as applicable. We shall be entitled to offset the purchase price by the amount of money owed by you to us for any payments necessary to acquire clear title to property or for any other debt. If we exercise our option to purchase, pending the closing of such purchase, we have the right to appoint a manager to maintain operation of the Business, or we may require that you close the Business during such period without removing any assets. You are required to maintain in force all insurance policies required under this Agreement until the date of such closing. We have the unrestricted right to assign this option to purchase the Business. We will be entitled to all customary warranties and representations in connection with our purchase of your property, including, without limitation, representations and warranties as to ownership and condition of and title to the property; liens and encumbrances on the property; validity of contracts and agreements; and liabilities affecting the property, contingent or otherwise.

14.2.    **Exclusions.** We may exclude from the personal property purchased hereunder cash or its equivalent and any equipment, signs, inventory, materials and supplies that are not reasonably necessary (in function or quality) to the Business's operation or that we have not approved as meeting standards for Moving Solutions Businesses.

15.    **NOTICES**

All notices, requests and reports to be given under this Agreement are to be in writing, and delivered by either hand, overnight mail, or certified mail, return receipt requested (except that regular monthly and other reports from you may be sent by regular mail), prepaid, to the following addresses (which may be changed by written notice):

| | |
|---|---|
| Franchisee: | Taralli, Inc.<br>120 Preamble Drive<br>Marlton, NJ 08053 |
| Franchisor: | Soft Pretzel Franchise Systems, Inc.<br>260 West Riverwoods Drive<br>New Hope, Pennsylvania 18938 |
| With a copy to: | Lane Fisher, Esq.<br>Fisher & Zucker LLC<br>121 South Broad Street, Suite 1200<br>Philadelphia, PA 19107 |

16.1.    **Amendments.** THIS AGREEMENT CONSTITUTES THE ENTIRE AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CHANGED EXCEPT BY A WRITTEN DOCUMENT SIGNED BY BOTH PARTIES.

16.2. **Applicable Law; Dispute Resolution.**

16.2.1. **Applicable Law.** This Agreement takes effect upon its acceptance and execution by us, and shall be interpreted and construed under the laws of the Commonwealth of Pennsylvania, which laws shall prevail in the event of any conflict of law. You acknowledge that this Agreement has been entered into in the Commonwealth of Pennsylvania, and that you are to receive valuable and continuing services emanating from our headquarters in Pennsylvania, including but not limited to assistance, support and the development of the System. In recognition of such services and their origin, you hereby irrevocably consent to personal jurisdiction in the Commonwealth of Pennsylvania as set forth above.

16.2.2. **Mediation.** At our option, all claims or disputes between you and us or our affiliates arising out of, or in any way relating to, this Agreement or any other agreement by and between you and us or our affiliates, or any of the parties' respective rights and obligations arising from such agreement, must be submitted first to mediation, in Philadelphia County, Pennsylvania, under the auspices of the American Arbitration Association ("AAA"), in accordance with AAA's Commercial Mediation Rules then in effect. Before commencing any legal action against us or our affiliates with respect to any such claim or dispute, you must submit a notice to us, which specifies, in detail, the precise nature and grounds of such claim or dispute. We will have a period of 30 days following receipt of such notice within which to notify you as to whether we or our affiliates elect to exercise our option to submit such claim or dispute to mediation. You may not commence any action against us or our affiliates with respect to any such claim or dispute in any court unless we fail to exercise our option to submit such claim or dispute to mediation, or such mediation proceedings have been terminated either: (i) as the result of a written declaration of the mediator(s) that further mediation efforts are not worthwhile; or (ii) as a result of a written declaration by us. We may specifically enforce our rights to mediation, as set forth under this Agreement. Each party shall bear its own cost of mediation and you shall share the mediation costs equally with us.

16.2.3. **Arbitration.** Except as otherwise provided in this Agreement, all disputes and claims relating to this Agreement or any other agreement entered into between the parties, the rights and obligations of the parties, or any other claims or causes of action relating to the making, interpretation, or performance of either party under this Agreement, shall be settled by arbitration in Philadelphia County, Pennsylvania, in accordance with the Federal Arbitration Act and the Commercial Arbitration Rules of the American Arbitration Association ("AAA"). The right and duty of the parties to this Agreement to resolve any disputes by arbitration shall be governed by the Federal Arbitration Act, as amended. The following shall supplement and, in the event of a conflict, shall govern any arbitration:

All disputes shall be heard by a panel of three arbitrators who shall interpret this Agreement in accordance with the laws of the Commonwealth of Pennsylvania. Each party shall appoint its own arbitrator, and the appointed arbitrators shall appoint a "neutral" arbitrator from the AAA's list of arbitrators. Each party must bear its own costs of arbitration including the fee for their respective arbitrator; provided, however, that the neutral arbitrator's fee shall be shared equally by you and us. The arbitrators shall have no authority to determine class action claims and shall have no authority to amend or modify the terms of the Agreement. To the extent permitted by applicable law, no issue of fact or law shall be given preclusive or collateral estoppel effect in any arbitration, except to the extent such issue may have been determined in another proceeding between you and us. Judgment upon the award of the arbitrator shall be submitted for confirmation to the United States District Court for the Eastern District of Pennsylvania and, if confirmed, may be subsequently entered in any court having competent jurisdiction. This Agreement to arbitrate shall survive any termination or expiration of this Agreement.

16.2.4. **Third Party Beneficiaries.** Our principals, agents and/or employees are express third party beneficiaries of this arbitration provision, each having authority to specifically enforce the right to arbitrate claims asserted against such person(s) by you.

**16.2.5.   Prior Notice of Claims.**  As a condition precedent to commencing an action for damages or for violation or breach of this Agreement, you must notify us within 30 days after the occurrence of the violation or breach, and failure to timely give such notice shall preclude any claim for damages.

**16.2.6.   Injunctive Relief.**  Nothing contained in this Agreement shall prevent us from applying to and obtaining from any court having jurisdiction a writ of attachment, a temporary injunction, preliminary injunction and/or other emergency relief available to safeguard and protect our interests. The parties expressly agree to the jurisdiction and venue of any court of general jurisdiction in Philadelphia County, Pennsylvania, and the jurisdiction and venue of the United States District Court for the Eastern District of Pennsylvania. All appeals from or relating to arbitration shall be heard before a federal court in that district. Except with respect to appeals from or relating to arbitration or an arbitrator's award being submitted for confirmation, this provision shall only apply where an arbitrator would not have jurisdiction or a claim cannot be arbitrated as a matter of law.

**16.2.7.   Limitation of Action.**  The parties further agree that no cause of action arising out of or under this Agreement may be maintained by either party against the other unless brought before the expiration of 2 years after the act, transaction or occurrence upon which such action is based or the expiration of 1 year after the complaining party becomes aware of facts or circumstances reasonably indicating that such party may have a claim against the other party hereunder, whichever occurs sooner, and that any action not brought within this period shall be barred as a claim, counterclaim, defense or set off.

**16.2.8.   Waiver of Punitive Damages.**  You hereby waive to the fullest extent permitted by law, any right to or claim or any punitive, exemplary, incidental, indirect, special or consequential damages (including, without limitation, lost profits) against us arising out of any cause whatsoever (whether such cause be based in contract, negligence, strict liability, other tort or otherwise) and agree that in the event of a dispute, your recovery is limited to your actual damages. If any other term of this Agreement is found or determined to be unconscionable or unenforceable for any reason, the foregoing provisions shall continue in full force and effect, including, without limitation, the waiver of any right to claim any consequential damages.

**16.3.     Construction of Language.**  The language of this Agreement must be construed according to its fair meaning, and not strictly for or against either party. All words in this Agreement refer to whatever number or gender the context requires. If more than one party or person is referred to as "you," their obligations and liabilities will be joint and several. Headings are for reference purposes and do not control interpretation. Reference to your "principals" includes your officers, directors and shareholders, if you are a corporation, your general and limited partners, if you are a partnership, and your members and managers, if you are a limited liability company. Reference to your "immediate family" includes the spouse, parent, children and siblings of you and the parents, children and siblings of your spouse.

**16.4.     Successors.**  References to "us" or "you" include all successors, assigns or transferees, subject to the limitations set forth in Section 11 of this Agreement.

**16.5.     Severability.**  If any provision of this Agreement is deemed invalid or inoperative for any reason, that provision shall be deemed modified to the extent necessary to make it valid and operative or, if it cannot be so modified, it must then be severed, and the remainder of that provision will continue in full force and effect as if this Agreement had been signed with the invalid portion so modified or eliminated; provided, however, that if any part of this Agreement relating to payments to us or any of our affiliates or protection of the Proprietary Marks, or the Confidential Information, including the Operations Manual and our other trade secrets, is declared invalid or unenforceable, then we at our option may terminate this Agreement immediately upon written notice to you.

**16.6.     Additional Documentation.**  You must from time to time, subsequent to the date first set forth above, at our request and without further consideration, execute and deliver such other documentation or agreement and take such other action as we reasonably may require in order to effectuate the transactions contemplated herein. In the event that you fail to comply with the provisions of this Section, you hereby appoint us as your attorney-in-

fact to execute any and all documents on your behalf, reasonably necessary to effectuate the transactions contemplated herein.

16.7.    **No Right to Offset.**  You may not withhold all or any part of any payment to us or any of our affiliates on the grounds of the alleged nonperformance of us or any of our affiliates or as an offset against any amount we or any of our affiliates may owe or allegedly owe you under this Agreement or any related agreements.

16.8.    **Force Majeure.**  Neither you, we, nor our affiliates will be liable for loss or damage or deemed to be in breach of this Agreement or any related agreement if its failure to perform its obligations is not the fault nor within the reasonable control of the person due to perform but results from, without limitation, fire, flood, natural disasters, acts of God, governmental acts or orders, or civil disorders.  Any delay resulting from any such cause will extend the time of performance for the period of such delay or for such other reasonable period of time as the parties agree in writing or will excuse performance, in whole or in part, as we deem reasonable.

16.9.    **State Law Applies.**  If any provision of this Agreement, including but not limited to its provisions for transfer, renewal, termination, notice of termination, or cure rights, is inconsistent with any valid law or regulation of the state in which your Factory is located, then the valid law or regulation of that state applicable to the franchised business must supersede any provision of this Agreement that is less favorable to you.

17.    **REPRESENTATIONS**

17.1.    **No Authority.**  NO SALESPERSON, REPRESENTATIVE OR OTHER PERSON HAS THE AUTHORITY TO BIND OR OBLIGATE US EXCEPT AN OFFICER AUTHORIZED BY US IN A WRITTEN DOCUMENT.  YOU ACKNOWLEDGE THAT NO REPRESENTATIONS, PROMISES, INDUCEMENTS, GUARANTEES OR WARRANTIES OF ANY KIND WERE MADE BY OR ON BEHALF OF US WHICH HAVE LED YOU TO ENTER INTO THIS AGREEMENT. YOUR SUCCESS AS A FRANCHISEE IS LARGELY DEPENDENT UPON YOUR EFFORTS, BUSINESS JUDGMENTS, THE PERFORMANCE OF YOUR EMPLOYEES, MARKET CONDITIONS AND VARIABLE FACTORS BEYOND OUR CONTROL OR INFLUENCE.  YOU ACKNOWLEDGE THAT SOME FRANCHISEES ARE MORE, OR LESS, SUCCESSFUL THAN OTHER FRANCHISEES AND THAT WE HAVE MADE NO REPRESENTATION THAT YOU WILL DO AS WELL AS ANY OTHER FRANCHISEE.

17.2.    **Receipt.**  YOU ACKNOWLEDGE RECEIPT OF THIS AGREEMENT, WITH ALL BLANKS COMPLETED AND WITH ANY AMENDMENTS AND EXHIBITS, AT LEAST 5 BUSINESS DAYS PRIOR TO THE DATE YOU SIGN IT.  IN ADDITION, YOU ACKNOWLEDGE RECEIPT OF OUR UNIFORM FRANCHISE OFFERING CIRCULAR AT LEAST 10 BUSINESS DAYS (14 CALENDAR DAYS FOR ILLINOIS FRANCHISEES) PRIOR TO THE EXECUTION OF THIS AGREEMENT OR YOUR PAYMENT OF ANY MONIES TO US, REFUNDABLE OR OTHERWISE.

17.3.    **Opportunity for Review by your Advisors.** WE RECOMMEND AND GRANT YOU AN OPPORTUNITY TO OBTAIN A REVIEW OF THIS AGREEMENT AND OUR UNIFORM FRANCHISE OFFERING CIRCULAR BY YOUR LAWYER, ACCOUNTANT OR OTHER BUSINESS ADVISOR PRIOR TO EXECUTION.

17.4.    **Execution Of Agreement.**  EACH OF THE UNDERSIGNED PARTIES WARRANTS THAT IT HAS THE FULL AUTHORITY TO SIGN AND EXECUTE THIS AGREEMENT.  IF YOU ARE A PARTNERSHIP OR CORPORATION, THE PERSON EXECUTING THIS AGREEMENT ON BEHALF OF SUCH PARTNERSHIP OR CORPORATION WARRANTS TO US, BOTH INDIVIDUALLY AND IN HIS CAPACITY AS PARTNER OR OFFICER, THAT ALL OF THE PARTNERS OF THE PARTNERSHIP OR ALL OF THE SHAREHOLDERS OF THE CORPORATION, AS APPLICABLE, HAVE READ AND APPROVED THIS AGREEMENT, INCLUDING ANY RESTRICTIONS WHICH THIS AGREEMENT PLACES UPON RIGHTS TO TRANSFER THEIR INTEREST IN THE PARTNERSHIP OR CORPORATION.

18.    GUARANTEE OF SHAREHOLDERS, PARTNERS, AND MEMBERS

If you are a corporation, or subsequent to execution hereof, you assign this Agreement to a corporation, all shareholders owning more than 10% of your outstanding shares (or if you are a partnership, or subsequent to execution hereof, you assign this Agreement to a partnership, all general partners, or if you are a limited liability company, or subsequent to execution hereof you assign this Agreement to a limited liability company, all members) hereby personally and unconditionally guarantee without notice, demand or presentment the payment of all of your monetary obligations under this Agreement and any other agreement between you and us and/or our affiliates, as if each were an original party to this or any other agreement in his or her individual capacity. All such personal guarantors further agree to be bound by the restrictions upon your activities upon transfer, termination or expiration and nonrenewal of this Agreement as if each were an original party to this Agreement in his or her individual capacity. All such personal guarantors must execute a continuing personal guarantee in the form attached hereto as Exhibit B.

19.    SPOUSAL CONSENT

If you are an individual(s), or subsequent to execution hereof, you assign this Agreement to an individual(s), such individual's spouse hereby personally and unconditionally guarantees without notice, demand or presentment the payment of all of your monetary obligations under this Agreement as if each were an original party to this Agreement in his or her individual capacity. All such spouses further agree to be bound by the restrictions upon your activities upon transfer, termination or expiration of this Agreement as if each were an original party to this Agreement in his or her individual capacity. In the event of divorce and re-marriage, or subsequent marriage, you covenant and agree to provide us with a properly executed spousal consent, in the form prescribed by us.

IN WITNESS WHEREOF, AND INTENDING TO BE LEGALLY BOUND HEREBY, THE PARTIES HERETO HAVE CAUSED THIS AGREEMENT TO BE EXECUTED EFFECTIVE THE DATE FIRST SET FORTH ABOVE.

_Arlene M Cabe 12/21/06_
Witness/Attest

Franchisee:
Taralli, Inc.

(Individual, Partnership or Corporation Name)

By: _____

Name/Title: STEVEN M. PISASALE / OWNER

By: _Lisa A. Pisasale_

Name/Title: Lisa A. Pisasale, Owner

PERSONAL GUARANTORS

Witness _____   _____

Witness _____   _____

Attest:

_Arlene McCabe 12/21/06_

Soft Pretzel Franchise Systems, Inc.

By: _____ 12/21/06

EXHIBIT A
SOFT PRETZEL FRANCHISE SYSTEMS, INC.
FRANCHISE AGREEMENT

SITE SELECTION ADDENDUM

## SITE SELECTION ADDENDUM

Soft Pretzel Franchise Systems, Inc. ("we") and _____("you"), have this _____ day of _____, 2006, entered into a Franchise Agreement for the operation of a retail store using our Proprietary Marks and System (the "**Factory**") and desire to supplement its terms, as set forth below. The parties therefore agree as follows:

1.      Within one hundred eighty (180) days after you receive notice of approval of the Franchise Agreement, you shall obtain a site, at your expense, for the business franchised under the Franchise Agreement (the "Franchised Business"), which site we shall approve as hereinafter provided.  The site shall be within the following territory:

SEE DATA SHEET

2.      Your failure to obtain a site for the **Factory** within the time required in Paragraph 1 shall constitute a default under the Franchise Agreement and this Site Selection Addendum.  Time is of the essence.

3.      Prior to your acquisition by lease or purchase of a site for the **Factory**, you shall submit to us, in the form we specify, a completed site review form, such other information or materials as we may reasonably require, and a letter of intent or other evidence satisfactory to us which confirms your favorable prospects for obtaining the proposed site.  We shall have thirty (30) days after receipt of such information and materials from you to approve or disapprove, in our sole discretion, the site as a location for the **Factory**.  No proposed site shall be deemed approved unless we have expressly approved it in writing.

4.      We shall furnish to you such site selection guidelines, consultation and on-site evaluation as we deem advisable as part of our evaluation of your request for site approval.  We shall not, however, provide on-site evaluation for any proposed site prior to our receipt of the information and materials required by Paragraph 3 hereof.  If we deem on-site evaluation necessary and appropriate, we shall conduct up to 2 on-site evaluations at our cost.  For each additional on-site evaluation (if any), you shall reimburse us for our reasonable expenses including, without limitation, the costs of travel, lodging, and meals.

5.      If you will occupy the **Factory** premises under a lease, you shall, prior to the execution of the lease, submit the lease to us for our written approval.  Our approval of the lease will be conditioned upon your execution of a Collateral Assignment of Lease in the form we prescribe and the inclusion of the following terms and conditions:

a.      That the initial term of the lease, or the initial term together with renewal terms, shall be for not less than 5 years with the option to renew the lease for 2 5-year terms;

b.      That the lessor consents to your use of such Proprietary Marks and initial signage as we may prescribe for the **Factory**;

c.      That the use of the premises by restricted solely to the operation of the **Factory**;

d.      That you be prohibited from subleasing or assigning all or any part of your occupancy rights or extending the term of or renewing the lease without our prior written consent;

e.      That the lessor provide to us copies of any and all notices of default given to you under the lease simultaneously with your notice;

f.      That we have the right to enter the premises to make modifications necessary to protect the Proprietary Marks or the System or to cure any default under the Franchise Agreement or under the lease;

g.      That we (or our designee) have the option, upon default, expiration, or termination of the Franchise Agreement, and upon notice to the lessor, to assume all of your right under the lease terms, including the right to assign or sublease.

6.      You shall furnish us a copy of any executed lease within 10 days after execution thereof.

7.      After we have approved a site for the Factory in writing and you have acquired the site pursuant to Paragraph 4 hereof, the site shall constitute the Approved Location referred to in Section 1.2 of the Franchise Agreement.

8.      You hereby acknowledge and agree that our approval of a site does not constitute an assurance, representation or warranty or any kind, express or implied, as to the suitability of the site for the Factory or for any other purpose. Our approval of the site indicates only that we believe the site complies with acceptable minimum criteria established by us solely for our purposes as of the time of the evaluation   Both parties to this Agreement acknowledge the application of criteria that have been effective with respect to other sites and premises may not be predictive of potential for all sites and that, subsequent to our approval of a site, demographic and/or economic factors, such as competition from other similar businesses, included in or excluded from our criteria could change thereby altering the potential of a site. Such factors are unpredictable and are beyond our control. We shall not be responsible for the failure of a site approved by us to meet your expectations as to revenue or operational criteria. You further acknowledge and agree that your acceptance of a franchise for the operation of the Factory at the site is based on your own independent investigation of the suitability of the site.

9.      This Site Selection Addendum constitutes an integral part of the Franchise Agreement between the parties hereto, and terms of this Site Selection Addendum shall be controlling with respect to the subject matter hereof. Except as modified or supplemented by this Site Selection Addendum, the terms of the Franchise Agreement are hereby ratified and confirmed.

        IN WITNESS WHEREOF, the parties hereto have duly executed this Addendum on the day and year first above written.

Attest:                                          SOFT PRETZEL FRANCHISE SYSTEMS, INC.

_Arlen McCabe 12/21/06_                    By: _____ _12/21/06_

                                                 Franchisee

                                                 TARALLI, INC.

_Arleen McCabe 12/21/06_           By: _Lisa A. Pisa·alli_

Witness                                          Title: _OWNERS_

© Soft Pretzel Franchise Systems, Inc.
Franchise Agreement 2006

EXHIBIT C
SOFT PRETZEL FRANCHISE SYSTEMS, INC.
FRANCHISE AGREEMENT

RESTRICTIVE COVENANT AND CONFIDENTIALITY AGREEMENT
*(for trained employees, shareholders, officers, directors,*
*general partners, members and managers of Franchisee)*

In consideration of my being a _____ [INSERT TITLE OF EMPLOYEE] of _____ (the "Franchisee"), and other good and valuable consideration, the receipt and sufficiency of which is acknowledged, I hereby acknowledge and agree that:

1. Franchisee has acquired the right and franchise from Soft Pretzel Franchise Systems, Inc. (the "Company") to establish and operate a Soft Pretzel Factory business (the "Business" or "Franchised Business") and the right to use in the operation of the Business the Company's trade names, trademarks and service marks (the "Proprietary Marks") and the Company's unique and distinctive format and system relating to the establishment and operation of Soft Pretzel Factory businesses (the "System"), as they may be changed, improved and further developed from time to time in the Company's sole discretion, only in the territory identified in the Franchise Agreement.

1. The Company possesses certain proprietary and confidential information relating to the operation of the System, which includes certain trade secrets and copyrighted materials, methods and other techniques and know-how (the "Confidential Information").

2. Any and all information, knowledge, know-how, and techniques which the Company specifically designates as confidential shall be deemed to be Confidential Information for purposes of this Agreement.

3. As _____ of the Franchisee, the Company and Franchisee will disclose the Confidential Information to me in furnishing to me the training program and subsequent ongoing training, the Soft Pretzel Franchise Systems, Inc. Operations Manual (the "Manual") and other general assistance during the term of this Agreement.

4. I will not acquire any interest in the Confidential Information, other than the right to utilize it in the operation of the Franchised Business during the term hereof, and the use or duplication of the Confidential Information for any use outside the System would constitute an unfair method of competition.

5. The Confidential Information is proprietary, involves trade secrets of the Company, and is disclosed to me solely on the condition that I agree, and I do hereby agree, that I shall hold in strict confidence all Confidential Information and all other information designated by the Company as confidential. Unless the Company otherwise agrees in writing, I will disclose and/or use the Confidential Information only in connection with my duties as _____ of the Franchisee, and will continue not to disclose any such information even after I cease to be in that position and will not use any such information even after I cease to be in that position unless I can demonstrate that such information has become generally known or easily accessible other than by the breach of an obligation of Franchisee under the Franchise Agreement.

6.     Except as otherwise approved in writing by the Company, I shall not, while in my position with the Franchisee, for myself, or through, on behalf of, or in conjunction with any person, persons, partnership, corporation or limited liability company, own, maintain, engage in, be employed by, or have any interest in any other business which operates or licenses any other business which offers similar products and services, except a Soft Pretzel Factory Business operating under the System and Proprietary Marks.

7.     I agree that each of the foregoing covenants shall be construed as independent of any other covenant or provision of this Agreement. If all or any portion of a covenant in this Agreement is held unreasonable or unenforceable by a court or agency having valid jurisdiction in an unappealed final decision to which the Company is a party, I expressly agree to be bound by any lesser covenant subsumed within the terms of such covenant that imposes the maximum duty permitted by law, as if the resulting covenant were separately stated in and made a part of this Agreement.

8.     I understand and acknowledge that the Company shall have the right, in its sole discretion, to reduce the scope of any covenant set forth in this Agreement, or any portion thereof, without my consent, effective immediately upon receipt by me of written notice thereof; and I agree to comply forthwith with any covenant as so modified.

9.     The Company is a third-party beneficiary of this Agreement and may enforce it, solely and/or jointly with the Franchisee. I am aware that my violation of this Agreement will cause the Company and the Franchisee irreparable harm; therefore, I acknowledge and agree that the Franchisee and/or the Company may apply for the issuance of an injunction preventing me from violating this Agreement, and I agree to pay the Franchisee and the Company all the costs it/they incur(s), including, without limitation, legal fees and expenses, if this Agreement is enforced against me. Due to the importance of this Agreement to the Franchisee and the Company, any claim I have against the Franchisee or the Company is a separate matter and does not entitle me to violate, or justify any violation of this Agreement.

10.     This Agreement shall be construed under the laws of the State of Pennsylvania. The only way this Agreement can be changed is in writing signed by both the Franchisee and me.

Signature: _____

Name: _____

Address: _____

Title: _____

**ACKNOWLEDGED BY FRANCHISEE**

By: _____

Name: _____

Title: _____

© Soft Pretzel Franchise Systems, Inc.
Franchise Agreement 2006

EXHIBIT D
SOFT PRETZEL FRANCHISE SYSTEMS, INC.
FRANCHISE AGREEMENT

COLLATERAL ASSIGNMENT OF LEASE

FOR VALUE RECEIVED, the undersigned ("Assignor") hereby assigns and transfers to Soft Pretzel Franchise Systems, Inc., a Pennsylvania corporation ("Assignee"), all of Assignor's right, title and interest as tenant in, to and under that certain lease, a copy of which is attached hereto as Exhibit 1 (the "Lease") respecting premises commonly known as _____. This Assignment is for collateral purposes only and except as specified herein, Assignee has no liability or obligation of any kind whatsoever arising from or in connection with this Assignment or the Lease unless Assignee takes possession of the premises demised by the Lease pursuant to the terms hereof and assumes the obligations of Assignor thereunder.

Assignor represents and warrants to Assignee that it has full power and authority to so assign the Lease and its interest therein and that Assignor has not previously assigned or transferred, and is not obligated to assign or transfer, any of its interest in the Lease or the premises demised thereby.

Upon a default by Assignor under the Lease or under the franchise agreement for a Soft Pretzel Factory between Assignee and Assignor (the "Franchise Agreement"), or in the event of a default by Assignor under any document or instrument securing the Franchise Agreement, or upon expiration of this Agreement, Assignee has the right and is hereby empowered to take possession of the premises demised by the Lease, expel Assignor therefrom, and, in such event, Assignor will have no further right, title or interest in the Lease. Assignor hereby authorizes the Lessor to disclose to Assignee, upon its request, sales and other information furnished to the Lessor by Assignor.

Assignor agrees that it will not suffer or permit any surrender, termination, amendment or modification of the Lease without the prior written consent of Assignee. Throughout the term of the Franchise Agreement and any renewals thereto, Assignor agrees that it must elect and exercise all options to extend the term of or renew the Lease not less than thirty (30) days prior to the last day that the option must be exercised, unless Assignee otherwise agrees in writing. If Assignee does not otherwise agree in writing, and upon failure of Assignor to so elect to extend or renew the Lease as aforesaid, Assignor hereby appoints Assignee as its true and lawful attorney-in-fact to exercise such extension or renewal options in the name, place instead of Assignor for the purpose of effecting such extension or renewal.

ASSIGNOR:

Dated:_____
SIGNED AND SEALED this _____
day of _____, ____

Notary Public

By:_____

Title:_____

## CONSENT AND AGREEMENT OF LESSOR

The undersigned Lessor under the aforedescribed Lease hereby:

    (a)    Agrees to notify Assignee in writing of and upon the failure of Assignor to cure any default by Assignor under the Lease;

    (b)    Agrees that Assignee has the right, but must not be obligated, to cure any default by Assignor under the Lease within 30 days after delivery by Lessor of notice thereof in accordance with Section (a) above;

    (c)    Consents to the foregoing Collateral Assignment and agrees that if Assignee takes possession of the premises demised by the Lease and confirms to Lessor the assumption of the Lease by Assignee as tenant thereunder, Lessor must recognize Assignee as tenant under the Lease, provided that Assignee cures within the 30-day period the defaults, if any, of Assignor under the Lease;

    (d)    Agrees that Assignee may further assign the Lease to a person, firm or corporation who must agree to assume the tenant's obligations under the Lease and who is reasonably acceptable to Lessor and upon such assignment Assignee will have no further liability or obligation under the Lease as assignee, tenant or otherwise.

DATED:_____          LESSOR:

                                      _____

                                      _____

© Soft Pretzel Franchise Systems, Inc.
Franchise Agreement 2006

EXHIBIT E
SOFT PRETZEL FRANCHISE SYSTEMS, INC.
FRANCHISE AGREEMENT

CONDITIONAL ASSIGNMENT
OF FRANCHISEE'S TELEPHONE NUMBERS

1. _____, doing business as Philly Soft Pretzel Factory ("Assignor"), in exchange for valuable consideration provided by Soft Pretzel Franchise Systems, Inc. ("Assignee"), receipt of which is hereby acknowledged hereby conditionally assigns to Assignee all telephone numbers and listings utilized by Assignor in the operation of its Soft Pretzel Factory at Assignor's above-referenced address. Those numbers are as follows: _____
_____.

2. The conditional agreement will become effective automatically upon termination of Assignor's Soft Pretzel Factory franchise. Upon the occurrence of that condition, Assignor must do all things required by the telephone company to assure the effectiveness of the assignment of telephone numbers as if the Assignee had been originally issued such telephones, telephone numbers, telephone listings and the usage thereof.

3. Assignor agrees to pay the telephone company on or before the effective date of assignment all amounts owed for the use of the telephone number(s) including, without limitation, Yellow Pages advertising. Assignor further agrees to indemnify Assignee for any sums Assignee must pay the telephone company to effectuate this agreement, and agrees to fully cooperate with the telephone company and Assignee in effectuating this assignment.

ASSIGNOR:

TARALLI, INC.

BY: _____ _Lisa A. Disisall_ Date: _12/5/06._

TITLE: _Owners_

ASSIGNEE:

Soft Pretzel Franchise Systems, Inc.

By: _____ 12/21/06.                    Attest: _____ 12/21/06

EXHIBIT F
SOFT PRETZEL FRANCHISE SYSTEMS, INC.
FRANCHISE AGREEMENT

ASSIGNMENT AND ASSUMPTION AGREEMENT

© Soft Pretzel Franchise Systems, Inc.
Franchise Agreement 2006

## ASSIGNMENT AND ASSUMPTION AGREEMENT

THIS ASSIGNMENT AND ASSUMPTION AGREEMENT (the "Assignment") is made and entered into this _____ day of _____, _____, by and between Soft Pretzel Franchise Systems, Inc., a Pennsylvania corporation ("SPF"), [insert name of individual franchisee] ("Assignor") and [insert name of corporation or limited liability company], an entity owned and controlled by Assignor with an address at _____.

## BACKGROUND

A.      SPF and Assignor entered into a certain Franchise Agreement dated [insert date of Franchise Agreement] (the "Franchise Agreement") whereby Assignor was granted the right and undertook the obligation to operate a Soft Pretzel Factory business at the following location [insert location] (the "Franchised Business");

B.      Assignor has formed Assignee for the convenience and purpose of owning and operating the Franchised Business;

C.      Assignor desires to assign his or her rights and obligations under the Franchise Agreement to Assignee pursuant to and in accordance with the provisions of the Franchise Agreement; and

D.      SPF is willing to consent to the assignment of the Franchise Agreement to Assignee, subject to the terms and conditions of this Assignment, including without limitation, Assignor's agreement to guarantee the performance by Assignee of its obligations under the Franchise Agreement and to continue to be bound by all of the provisions of the Franchise Agreement.

## AGREEMENT

In consideration of the mutual covenants contained in this Assignment, and for other good and valuable consideration, the receipt and sufficiency of which is acknowledged, and intending to be legally bound, the parties agree as follows:

1.      Assignor hereby assigns and transfers over to Assignee all of his or her rights, title and interest in and to the Franchise Agreement, effective as of the date of this Assignment.

2.      Assignee hereby assumes all of Assignor's obligations, assignments, commitments, duties and liabilities under the Franchise Agreement, and agrees to be bound by and observe and faithfully perform all of the obligations, assignments, commitments and duties of the franchisee under the Franchise Agreement with the same force and effect as if the Franchise Agreement were originally written with Assignee as franchisee.

3.      Assignor agrees that [he or she] shall continue to be bound by all of the terms and conditions of the Franchise Agreement, including, without limitation, all non-competition, confidentiality and indemnification obligations, and that nothing contained in this Assignment herein shall be deemed to relieve Assignor of any of [his or her] obligations contained in the Franchise Agreement. Assignor further agrees to, and by this instrument does hereby, guarantee the performance by Assignee of all of its obligations, commitments, duties and liabilities under the Franchise Agreement. Without limiting the foregoing, Assignor irrevocably and unconditionally guarantees to SPF (i) that Assignee will pay all amounts to be paid and otherwise comply with all provisions of the Franchise Agreement and any other agreement between Assignor and SPF or its affiliates concerning the operation of the Franchised Business, and (ii) that if Assignee defaults in making any such payments or complying with any such provisions, Assignor shall pay forthwith upon demand all amounts due and owing SPF and all damages that may arise as a result of any such non-compliance.

4.      In the enforcement of any of its rights against Assignor, SPF may proceed as if Assignor was the primary obligor under the Franchise Agreement. Assignor waives any right to require SPF to first proceed against

Assignee or to proceed against or exhaust any security (if any) held by SPF or to pursue any other remedy available to it before proceeding against Assignor. No dealing between SPF and Assignee shall exonerate, release, discharge or in any way reduce the obligations of Assignor hereunder, in whole or in part, and in particular and without limiting the generality of the foregoing, SPF may modify or amend the Franchise Agreement, grant any indulgence, release, postponement or extension of time, waive any term or condition of the Franchise Agreement, or any obligation of Assignee, take or release any securities or other guarantees for the performance by Assignee of any of its obligations, and otherwise deal with Assignee as SPF may see fit without affecting, lessening or limiting in any way the liability of Assignor. Notwithstanding any assignment for the general benefit of creditors or any bankruptcy or other act of insolvency by Assignee and notwithstanding any rejection, disaffirmance or disclaimer of this Assignment or the Franchise Agreement, Assignor shall continue to be fully liable.

5.      This Assignment is entered into in the Commonwealth of Pennsylvania and shall be construed and interpreted in accordance with its laws, which laws shall control in the event of any conflict of law.

6.      This Assignment shall be binding and inure to the benefit of the parties and their respective heirs, successors and assigns.

7.      Assignor and Assignee acknowledge and agree that they are bound by the dispute resolution provisions of the Franchise Agreement. Assignor and Assignee further agree that they have and will continue to have a substantial relationship with SPF at its offices in Pennsylvania and that, with the exception of SPF's right to seek injunctive relief in any appropriate jurisdiction as set forth below, any action by or against them arising out of or relating to this Assignment shall be commenced, litigated and concluded only in any state or federal court of general jurisdiction in the Commonwealth of Pennsylvania. Assignor and Assignee agree that Pennsylvania represents the most convenient forum for the parties to litigate any disputes between them. Accordingly, Assignor and Assignee irrevocably submit to the jurisdiction of such court and waive any objection they may have to either the jurisdiction or venue of such court. Assignor and Assignee further waive any objection that such court is an inconvenient forum. SPF shall have the option, at its sole discretion, of bringing any action seeking equitable relief to enforce the terms of this Assignment in any court of competent jurisdiction in order to prevent real or threatened harm, and Assignor and Assignee consent to the entry of injunctive relief, including, without limitation, temporary retraining orders and/or preliminary and permanent injunctions without the requirement of bond, according to the usual equity rules in the jurisdiction in which such relief is sought.

8.      The Franchise Agreement and this Assignment shall constitute the entire integrated assignment between the parties with respect to the subject matter contained herein and shall not be subject to change, modification, amendment or addition without the express written consent of all the parties.

9.      In the event that it becomes necessary for SPF to retain the services of legal counsel to enforce the terms of this Assignment, SPF shall be entitled to recover all costs and expenses, including reasonable attorneys', expert and investigative fees, incurred in enforcing the terms of this Assignment.

10.     Each party declares that the terms of this Assignment have been completely read and are fully understood and voluntarily accepted by each party, after having a reasonable opportunity to retain, and confer with counsel. This Assignment is entered into after a full investigation by the parties, and the parties are not relying upon any statements or representations not contained in this Assignment.

11.     The persons executing this Assignment on behalf of Assignee acknowledge their authority to do so.

12.     The obligations of Assignor and Assignee under this Assignment are joint and several.

**I HAVE READ THE ABOVE AGREEMENT AND UNDERSTAND ITS TERMS. I WOULD NOT SIGN THIS AGREEMENT IF I DID NOT UNDERSTAND AND AGREE TO BE BOUND BY ITS TERMS.**

**IN WITNESS WHEREOF,** the undersigned have affixed their signatures hereto as of the day and date first above written.

Attest:                                        Soft Pretzel Franchise Systems, Inc.

_____        By: _____

                                                            ASSIGNOR

_____        _____
Witness                                        Individually

                                                            ASSIGNEE
Attest:

_____        By: _____

® Soft Pretzel Franchise Systems, Inc.
Franchise Agreement 2006

# EXHIBIT   B

AAA WebFile

## ONLINE FILING DEMAND FOR ARBITRATION/MEDIATION FORM

**This concludes your filing.**

**Thank you for submitting your claim to the AAA.**

**Your claim confirmation number is: 002-AAW-9PF**

To institute proceedings, please send a copy of this form and the Arbitration Agreement to the opposing party.

Your dispute has been filed in accordance with: Commercial Dispute Resolution Procedures

This Claim has Been Filed For: Arbitration

Filing Fee: $1,850.00

---

**Additional Claim Information**

Claim Amount: $130,000.00

Claim Description: Permanent injunctive relief enforcing noncompete and buy back provisions; breach of contract; lost future royalties and interest. See uploaded document.

Arbitration Clause: See uploaded document at Exhibit A, Section 16.2.2

Hearing Locale Requested: Philadelphia , PA

Contract Date: 12/21/2006

Number of Neutrals: 1

---

| **Claimant** | **Representatives** |
|---|---|
| **Soft Pretzel Franchise Systems, Inc.** | |
| Type of Business: Other | |
| Name: | Name: Jeffrey Zucker |
| Company Name: Soft Pretzel Franchise Systems, Inc. | Company Name: Fisher Zucker, LLC |
| Address: 7368 Frankford Avenue Philadelphia, PA  19136 | Address: 21 South 21st Street Philadelphia, PA  19103 |
| Tel#: 800-679-4221 | Tel#: 215-825-3100 |
| Fax#: | Fax#: 215-825-3101 |
| Email: mferrill@spfsinc.com | Email: jzucker@fisherzucker.com |
| Include in Caption: Company | |

---

| **Respondent** | **Representatives** |
|---|---|
| **Taralli, Inc. Steve Pisasale Lisa Pisasale** | |
| Type of Business: Other | |
| Name: | Name: Thomas M. Barron |
| Company Name: Taralli, Inc. | Company Name: Law Office of Thoams Barron |
| Address: 230 N. Maple Avenue Marlton, NJ  08053 | Address: 800 N. Church St., Suite 102 Moorestown, NJ  08057 |
| Tel#: 856-439-6341 | Tel#: 856-439-6341 |
| Fax#: | Fax#: 856-432-1080 |
| Email: | Email: tbarron@tombarronlaw.com |
| Include in Caption: Company | |
| Name: Steve M Pisasale | |
| Company Name: Taralli, Inc. | |
| Address: 230 N. Maple Ave Marlton, NJ  08053 | |
| Tel#: 856-439-6341 | |

---

|  | |
|---|---|
| Fax#: | |
| Email: | |
| Include in Caption: | **Individual** |
| Name: | **Lisa A Pisasale** |
| Company Name: | **Taralli, Inc.** |
| Address: | **230 N. Maple Avenue** |
| | **Marlton, NJ  08053** |
| Tel#: | **856-439-6341** |
| Fax#: | |
| Email: | |
| Include in Caption: | **Individual** |

To institute proceedings, please send a copy of this form and the Arbitration Agreement to the opposing party.

Your demand/submission for arbitration/mediation has been received on 06/28/2013 13:31 EDT



**American Arbitration Association**
*Dispute Resolution Services Worldwide*

**COMMERCIAL ARBITRATION RULES**
**DEMAND FOR ARBITRATION**

Please visit our website at www.adr.org if you would like to file this case online. AAA Case Filing Services can be reached at 877-495-4185.

| *MEDIATION: If you would like the AAA to contact the other parties and attempt to arrange a mediation, please check this box. ☐* <br> *There is no additional administrative fee for this service.* | | | | | |
|---|---|---|---|---|---|
| Name of Respondent <br> Taralli, Inc. (a/k/a Taralli Enterprises, LLC) | | | Name of Representative (if known) <br> Thomas M. Barron | | |
| Address <br> Steven and Lisa Pisasale <br> 230 N. Maple Avenue | | | Name of Firm (if applicable) <br> Law Offices of Thomas Barron <br> Representative's Address <br> 800 N. Church Street, Suite 102 | | |
| City <br> Marlton | State <br> NJ | Zip Code <br> 8053- | City <br> Moorestown | State <br> NJ | Zip Code <br> 8057- |
| Phone No. | | Fax No. | Phone No. <br> 856-439-6341 | | Fax No. <br> 856-432-1080 |
| Email Address: | | | Email Address: <br> tbarron@tombarronlaw.com | | |

The named claimant, a party to an arbitration agreement dated December 21, 2006_____, which provides for arbitration under the Commercial Arbitration Rules of the American Arbitration Association, hereby demands arbitration.

THE NATURE OF THE DISPUTE
Permanent injunctive relief enforcing noncompete and buy back provisions; lost future royalties.

| Dollar Amount of Claim  $130,000.00 | Other Relief Sought:  ☒ Attorneys Fees       ☒ Interest <br> ☐ Arbitration Costs ☐ Punitive/ Exemplary ☐ Other _____ |
|---|---|
| Amount Enclosed $ 1,850.00_____      In accordance with Fee Schedule:  ☐Flexible Fee Schedule   ☒Standard Fee Schedule | |

PLEASE DESCRIBE APPROPRIATE QUALIFICATIONS FOR ARBITRATOR(S) TO BE APPOINTED TO HEAR THIS DISPUTE:
Franchise law, contract law

Hearing locale Philadelphia, PA_____      (check one) ☐ Requested by Claimant   ☒ Locale provision included in the contract

| Estimated time needed for hearings overall: <br> _____ hours or  3.00   days | Type of Business:  Claimant    Franchisor_____ <br> Respondent Franchisee_____ |
|---|---|

Is this a dispute between a business and a consumer? ☐Yes ☒ No Does this dispute arise out of an employment relationship? ☐ Yes ☒ No

If this dispute arises out of an employment relationship, what was/is the employee's annual wage range? Note: This question is required by California law. ☐Less than $100,000 ☐ $100,000 - $250,000 ☐ Over $250,000

You are hereby notified that a copy of our arbitration agreement and this demand are being filed with the American Arbitration Association with a request that it commence administration of the arbitration. The AAA will provide notice of your opportunity to file an answering statement.

| Signature (may be signed by a representative)    Date: <br> *[signature]*                6/27/13 | Name of Representative <br> Jeffrey Zucker | | |
| Name of Claimant <br> Soft Pretzel Franchise Systems, Inc. | Name of Firm (if applicable) <br> Fisher Zucker, LLC | | |
|---|---|---|---|
| Address (to be used in connection with this case) <br> 7368 Frankford Avenue | Representative's Address <br> 21 South 21st Street | | |
| City <br> Philadelphia | State <br> PA | Zip Code <br> 19136- | City <br> Philadelphia | State <br> PA | Zip Code <br> 19103- |

Note: The above two-row section continues:

| City <br> Philadelphia | State <br> PA | Zip Code <br> 19136- | City <br> Philadelphia | State <br> PA | Zip Code <br> 19103- |
|---|---|---|---|---|---|
| Phone No. <br> 1-800-679-4221 | | Fax No. | Phone No. <br> 215-825-3100 | | Fax No. <br> 215-825-3101 |
| Email Address: <br> mferrill@spfsinc.com | | | Email Address: <br> jzucker@fisherzucker.com | | |

To begin proceedings, please send a copy of this Demand and the Arbitration Agreement, along with the filing fee as provided for in the Rules, to: American Arbitration Association, Case Filing Services, 1101 Laurel Oak Road, Suite 100 Voorhees, NJ  08043.  Send the original Demand to the Respondent.

## AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| SOFT PRETZEL FRANCHISE SYSTEMS INC., | : <br> : <br> : |
| Claimant, | : |
| | :     Case No. _____ |
| v. | : |
| | : |
| TARALLI, INC. (a/k/a TARALLI ENTERPRISES, LLC), STEVEN M. PISASALE, and LISA A PISASALE | : <br> : <br> : |
| Respondents. | : <br> : |

## DEMAND FOR ARBITRATION

### PARTIES

1.     Claimant SPF is a Pennsylvania corporation with its principal place of business at 7368 Frankford Avenue, Philadelphia, PA 19136.

2.     Respondent Taralli, Inc., a/k/a Taralli Enterprises, LLC ("Taralli"), is New Jersey limited liability company with a business address at 230 N. Maple Avenue, Marlton, New Jersey 08053.

3.     Respondents Steven M. Pisasale and Lisa A. Pisale (the "Pisasales") are husband and wife and residents of New Jersey and are the sole owners and members of Taralli.  They have a principal place of business at 230 N. Maple Avenue, Marlton, New Jersey 08053.

### JURISDICTION

4.     SPF and Taralli are parties to a franchise agreement executed on December 21, 2006 (the "Franchise Agreement").   A copy of the Franchise Agreement is attached to this Complaint as "Exhibit A."  Pursuant to Section 16.2.3 of the Franchise Agreement, all disputes and claims pertaining to the Franchise Agreement are to be submitted to arbitration before the

American Arbitration Association, except that pursuant to Section 16.2.6 SPF may seek preliminary injunctive relief in court to prevent any harm prior to or during the pendency of the arbitration proceedings.

<u>FACTS</u>

**A.**     **The SPF System**

5.     SPF is the franchisor of retail businesses offering traditional "South Philadelphia" style soft pretzels freshly baked on the premises and other authorized products, using Franchisor's proprietary recipes, preparation and presentation methods, under the name Philly Pretzel Factory®.  SPF's franchisees are licensed to use SPF's trade names, trademarks, service marks and trade dress and are permitted to operate a business using SPF's business system.

**B.**     **Termination of the Franchise Agreement**

6.     Pursuant to the Franchise Agreement, which was executed on December 21, 2006, Taralli obtained the right and undertook the obligation to operate a Philly Pretzel Factory (the "Franchised Business") at Crispin Square, 230 N. Maple Avenue, Marlton, New Jersey, for a term of 10 years (the "Term").  <u>See</u> Exhibit A.  Contemporaneous with Taralli's execution of the Franchise Agreement, the Pisasales executed a personal guaranty pursuant to which they agreed to guarantee Taralli's obligations under the Franchise Agreement.  <u>Id.</u>

7.     Pursuant to Section 12.1.2.1 of the Franchise Agreement, SPF has the right to terminate the Franchise Agreement upon 15 days written notice to Taralli and the Pisasales if Taralli and the Pisasales fail to pay SPF any and all sums owed under the Franchise Agreement as and when due.

8.     On January 11, 2013, SPF sent Taralli and the Pisasales a notice of default (the "January Default Notice") as a result of their failure to report the Franchised Business's gross

sales and pay royalty and advertising payments due under the Franchise Agreement, as well as their failure to pay an outstanding invoice dated February 4, 2011 for legal fees. The January Default Notice provided Taralli and the Pisasles 15 days to cure their monetary defaults.

11.     Despite their receipt of the January Notice of Default, Taralli and the Pisasales failed to cure their monetary defaults within 15 days of their receipt of the January Notice of Default.

12.     By letter dated February 5, 2013, SPF notified Taralli and the Pisasales that the Franchise Agreement was terminated pursuant to Section 12.1.2.1.

13.     On February 8, 2013, Taralli and the Pisasales, along with the Pretzel Bakers Association of New Jersey, filed a Verified Complaint and an Order to Show Cause before the Superior Court of New Jersey, Burlington County, Chancery Division, Docket No. BUR-C-17-13, to prevent SPF from terminating Taralli's franchise.

14.     On May 31, 2013, the parties appeared before the Honorable Karen L. Suter, P.Ch., for a hearing on Taralli and the Pisasales' Order to Show Cause application. At the hearing, Judge Suter entered an Order permitting SPF to move forward with the termination of the franchise and ruling that the franchise would be terminated effective June 14, 2013.

**C.     Violation of the Post-Termination Covenant Not to Compete contained in the Franchise Agreement**

15.     On June 4, 2013, respondents' counsel wrote to claimant's counsel and stated that respondents "will continue to operate a pretzel shop at its current location under the name Marlton Soft Pretzels."

16.     Pursuant to Section 10.5.2 of the Franchise Agreement the respondents are prohibited for a period of two years after the termination of the franchise agreement from owning

or engaging in another business similar to SPF within a ten mile radius of the former franchise location or any other SPF franchisee.

17.   On June 12, 2013, claimant's counsel wrote to respondents' counsel informing respondents, in part, that SPF intended to enforce the post-termination covenant not to compete contained in Section 10.5.2 of the Franchise Agreement and that SPF intended to exercise its right to purchase Taralli's equipment pursuant to Section 14.1 of the Franchise Agreement.

18.   Despite the termination of the Franchise Agreement, Taralli and the Pisasales are continuing to operate a business similar, if not identical, to the former SPF franchise, all in breach of the post-termination obligations under the Franchise Agreement.

19.   Further, despite the termination of the Franchise Agreement and SPF's notice of its intent to purchase the equipment of the former franchise, Taralli and the Pisasales have not cooperated.  Upon information and belief, respondents are using the equipment of the former SPF franchise, including a proprietary pretzel stringing machine, to operate their competing business.

## COUNT I

## UNFAIR COMPETITION AND VIOLATION OF RESTRICTIVE COVENANT AND EQUIPMENT PURCHASE PROVISIONS OF THE FRANCHISE AGREEMENT

20.   SPF seeks to enjoin Taralli's and the Pisasales' continued operation of a pretzel business at the location of respondents' former SPF franchise, and, to enforce SPF's right to purchase the equipment of respondents' former franchise, including the propriety pretzel stringing equipment pending the hearing of this matter in arbitration.

21.   SPF has a high probability of success on the merits of its case because respondents are openly and unlawfully continuing to operate a pretzel business at the exact

location of the former SPF franchise in violation of the restrictive covenant agreed to by the parties.

22.     Respondents are also failing to sell the equipment of the former SPF franchise, including the proprietary pretzel stringing equipment, to SPF in violation of the provision giving SPF the right to purchase the equipment of the franchise upon termination as agreed to by the parties.

23.     Upon information and belief, respondents are utilizing SPF's proprietary equipment recipes and methodologies to compete with SPF.

24.     Respondents' competing pretzel business at the location of the former SPF franchise and respondents' unlawful use of SPF's proprietary equipment, recipes and methodologies will cause SPF irreparable harm in that SPF will have difficulty franchising and refranchising respondents' territory; business in respondents' territory will be diverted from SPF's authorized franchisees; and the goodwill related to SPF's business system will be diluted and taken from SPF's control.

25.     SPF has no adequate remedy at law in that the damages as set forth above, including the misappropriation and theft of its proprietary business system and trade secrets, and the consequent injury to consumer recognition and goodwill, and the inability to refranchise the affected trading area, cannot be compensated in monetary damages.

26.     Additionally, SPF's authorized franchisees and the consuming public will suffer irreparable harm as a result of respondents' conduct.  The damages sustained by SPF as a result of the loss of its goodwill, the relationship problems encountered with its franchisees and the potential deception and harm to the consuming public cannot be ascertained nor can such harm be compensated for in monetary damages.

27.     SPF's immediate and irreparable harm will increase unless and until Taralli and the Pisasales are enjoined from violating their post-termination obligations, from avoiding their obligation to sell the equipment of their former franchise to SPF and otherwise competing unfairly with SPF.

28.     An injunction is the only method by which SPF can prevent the further usurpation of its business system and trade secrets.

**WHEREFORE**, SPF respectfully requests that the Panel enter an injunction against Taralli and the Pisasales as follows:

   a.  Taralli and the Pisasales shall not, for a period of two years, either directly or indirectly, for themselves or through, on behalf of, or in conjunction with any other person, persons, partnership or corporation, own, maintain, engage in, be employed by or have any interest in any business specializing in whole or in part in the sale of soft pretzels at or within ten miles of 230 N. Maple Avenue, Marlton, New Jersey or any other SPF franchisee.

   b.  Taralli and the Pisasales shall sell SPF the equipment of its former franchise, including the proprietary pretzel stringing equipment, pursuant to Section 14, of the Franchise Agreement.

<u>**COUNT II**</u>
**(Breach of the Franchise Agreements)**

29.     Claimant SPF incorporates the allegations set forth above by reference as if they were set forth fully in this paragraph.

30.     Claimants SPF has fulfilled all of its obligations under the Franchise Agreement.

31.     Respondents breached the Franchise Agreement by failing to report the Franchised Business's gross sales and pay royalty and advertising payments due under the Franchise Agreement, as well as their failure to pay an outstanding invoice dated February 4, 2011 for legal fees.

32.     As a direct and proximate result of the Respondents' breaches of their obligations under the Franchise Agreement, Claimant SPF has suffered damages.

**WHEREFORE**, Claimant SPF respectfully requests that the Panel enter an injunction against Taralli and the Pisasales, jointly and severally, for past due fees due under the Franchise Agreement and expectation damages equal to the present value of royalty fees due for the remainder of the Franchise Agreement which equal at least $60,000, together with interest, as well as any other relief as the Panel deems just and proper.

Respectfully submitted,

FISHER & ZUCKER, LLC

By:  /s/ Jeffrey Zucker
Jeffrey Zucker, Esquire
21 South 21st Street
Philadelphia, PA 19103
(215) 825-3100

Attorneys for Claimant
Soft Pretzel Franchise Systems, Inc.

Dated: June 28, 2013

# EXHIBIT  C

# Thomas M. Barron

### -Attorney at Law-
800 N. Church Street, Suite 102
Moorestown, NJ  08057
Tel:  856 439 6341     Fax:  856 432 1080
tbarron@tombarronlaw.com

June 4, 2013

Jeffrey Zucker, Esquire
David J. Allsman, Esquire
Fisher Zucker
21 S. 21st Street
Philadelphia, PA  19103

Sent via fax: 215 825 3101 and email

Re:   Taralli Enterprises, LLC, et al.  v. Soft  Pretzel Franchise Systems, Inc., et al
      Docket No.  BUR-C-17-13
      File No.  3050

Dear Messrs. Allsman and Zucker:

Taralli Enterprises will continue to operate a pretzel shop at its current location under the name "Marlton Soft Pretzels".  All trademarks and trade dress associated with the Soft Pretzel Franchise System, Inc. will be removed and there will be no identification or link between Marlton Soft Pretzels and your client. All of this will be done before the June 14, 2013 deadline imposed by Judge Suter.

Additionally, it is the intent of Taralli to introduce new lines of consumer items at the store, which may include Italian water ice. This should further distinguish the Marlton Soft Pretzel business from the Philly Soft Pretzel Factory brand and stores.

Please call me if your client has considered the offer to mediate.  Additionally, if your client wishes to purchase the business for fair value, I am authorized to enter into such discussions.

Very truly yours,

/s/ Thomas M. Barron

Thomas M. Barron

TMB:tb
Cc.     Steven M. Pisasale and Lisa A. Pisasale

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania

| | |
|---|---|
| Soft Pretzel Franchise Systems, Inc. | ) ) ) ) |
| *Plaintiff(s)* | ) ) |
| v. | ) ) |
| Taralli, Inc. (a/k/a Taralli Enterprises, LLC), Steven M. Pisasale and Lisa A. Pisasale | ) ) ) ) |
| *Defendant(s)* | ) |

Civil Action No.

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   Taralli, Inc. (a/k/a Taralli Enterprises, LLC), 230 N. Maple Avenue, Marlton, New
Jersey 08053

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you
are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ.
P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of
the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney,
whose name and address are:   Jeffrey Zucker, Esq.
Fisher Zucker, LLC
21 South 21st Street
Philadelphia, PA 19103

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint.
You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ _____0.00_____ .

I declare under penalty of perjury that this information is true.


Date: _____          _____
                                                  *Server's signature*

                                          _____
                                                  *Printed name and title*


                                          _____
                                                  *Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania

| | |
|---|---|
| Soft Pretzel Franchise Systems, Inc. | ) ) ) ) |
| *Plaintiff(s)* | ) ) |
| v. | ) |
| Taralli, Inc. (a/k/a Taralli Enterprises, LLC), Steven M. Pisasale and Lisa A. Pisasale | ) ) ) ) |
| *Defendant(s)* | ) |

Civil Action No.

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Steven M. Pisasale, 230 N. Maple Avenue, Marlton, New Jersey 08053

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:     Jeffrey Zucker, Esq.
Fisher Zucker, LLC
21 South 21st Street
Philadelphia, PA 19103

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

□ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

□ I left the summons at the individual's residence or usual place of abode with *(name)*
_____ , a person of suitable age and discretion who resides there,
on *(date)* _____ , and mailed a copy to the individual's last known address; or

□ I served the summons on *(name of individual)* _____ , who is
designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

□ I returned the summons unexecuted because _____ ; or

□ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.


Date: _____                    _____
                                          *Server's signature*

                                          _____
                                          *Printed name and title*

                                          _____
                                          *Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Eastern District of Pennsylvania

| | | |
|---|---|---|
| Soft Pretzel Franchise Systems, Inc. | ) | |
| | ) | |
| | ) | |
| | ) | |
| _____ | ) | |
| *Plaintiff(s)* | ) | Civil Action No. |
| v. | ) | |
| Taralli, Inc. (a/k/a Taralli Enterprises, LLC), Steven | ) | |
| M. Pisasale and Lisa A. Pisasale | ) | |
| | ) | |
| | ) | |
| _____ | ) | |
| *Defendant(s)* | ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Lisa A. Pisasale, 230 N. Maple Avenue, Marlton, New Jersey 08053

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:     Jeffrey Zucker, Esq.
Fisher Zucker, LLC
21 South 21st Street
Philadelphia, PA 19103

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

### PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❐ I returned the summons unexecuted because _____ ; or

❐ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Soft Pretzel Franchise Systems, Inc.

## DEFENDANTS
Taralli, Inc. (a/k/a Taralli Enterprises, LLC), Steve M. Pisasale and Lisa A. Pisasale

**(b)** County of Residence of First Listed Plaintiff   Philadelphia County, PA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Burlington County, NJ
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Jeffrey Zucker, Fisher Zucker, LLC, 21 South 21st Street, Philadelphia, PA 19103; (215) 825-3100

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
       Plaintiff

☐ 3  Federal Question
       *(U.S. Government Not a Party)*

☐ 2  U.S. Government
       Defendant

☒ 4  Diversity
       *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                              *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☒ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1  Original
       Proceeding

☐ 2  Removed from
       State Court

☐ 3  Remanded from
       Appellate Court

☐ 4  Reinstated or
       Reopened

☐ 5  Transferred from
       Another District
       *(specify)*

☐ 6  Multidistrict
       Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. 1332(a)

Brief description of cause:
preliminary injunction to enforce restrictive covenant and proprietary equipment buy-back provision

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $
130,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE

DOCKET NUMBER

DATE   6/28/13

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

JS 44 Reverse (Rev. 12/12)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.(a) **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

  (b) **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

  (c) **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II. **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

III. **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV. **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

V. **Origin.** Place an "X" in one of the six boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

VI. **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

VII. **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII. **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

## UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: _7868 Frankford Avenue, Philadelphia, PA 19136_

Address of Defendant: _230 N. Maple Ave., Marlton, NJ 08053_

Place of Accident, Incident or Transaction: _Philadelphia_

*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))  Yes☐ No☑

Does this case involve multidistrict litigation possibilities?  Yes☐ No☑

*RELATED CASE, IF ANY:*

Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
Yes☐ No☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
Yes☐ No☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
Yes☐ No☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
Yes☐ No☑

**CIVIL:** (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
(Please specify) _____

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☑ All other Diversity Cases
(Please specify) _Franchise Agreement_

## ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, _Jeffrey Zucker_, counsel of record do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☑ Relief other than monetary damages is sought.

DATE: _6/28/13_ _____ _71234_
Attorney-at-Law  Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _6/28/13_ _____ _71234_
Attorney-at-Law  Attorney I.D.#

CIV. 609 (5/2012)

# UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: _7868 Frankford Avenue, Philadelphia, PA 19136_

Address of Defendant: _230 N. Maple Ave., Marlton, NJ 08053_

Place of Accident, Incident or Transaction: _Philadelphia_
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))    Yes☐    No☒

Does this case involve multidistrict litigation possibilities?    Yes☐    No☒

*RELATED CASE, IF ANY:*

Case Number: _____    Judge _____    Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
   Yes☐    No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
   Yes☐    No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
   Yes☐    No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
   Yes☐    No☒

---

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify) _____

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☒ All other Diversity Cases
   (Please specify) _Franchise Agreement_

---

## ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, _Jeffrey Zucker_, counsel of record do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☒ Relief other than monetary damages is sought.

DATE: _6/28/13_    _____    _71234_
                   Attorney-at-Law    Attorney I.D.#

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

---

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _6/28/13_    _____    _71234_
                   Attorney-at-Law    Attorney I.D.#

CIV. 609 (5/2012)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

Soft Pretzel Franchise
Systems, Inc.

:                                CIVIL ACTION
:
Taralli, Inc. (a/k/a Taralli   :
Enterprises, LLC), Steven M.   :         NO.
Pisasale and Lisa A. Pisasale  :

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits.                          ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
exposure to asbestos.                                                                  ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court.  (See reverse side of this form for a detailed explanation of special
management cases.)                                                                     ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.     (X)

6/28/13
**Date**                **Attorney-at-law**              **Attorney for** Soft Pretzel Franchise Systems, Inc.

215-825-3100       215-825-3101       jzucker@fisherzucker.com
**Telephone**            **FAX Number**                **E-Mail Address**

(Civ. 660) 10/02

**Civil Justice Expense and Delay Reduction Plan**
**Section 1:03 - Assignment to a Management Track**

(a)        The clerk of court will assign cases to tracks (a) through (d) based on the initial pleading.

(b)        In all cases not appropriate for assignment by the clerk of court to tracks (a) through (d), the plaintiff shall submit to the clerk of court and serve with the complaint on all defendants a case management track designation form specifying that the plaintiff believes the case requires Standard Management or Special Management. In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

(c)        The court may, on its own initiative or upon the request of any party, change the track assignment of any case at any time.

(d)        Nothing in this Plan is intended to abrogate or limit a judicial officer's authority in any case pending before that judicial officer, to direct pretrial and trial proceedings that are more stringent than those of the Plan and that are designed to accomplish cost and delay reduction.

(e)        Nothing in this Plan is intended to supersede Local Civil Rules 40.1 and 72.1, or the procedure for random assignment of Habeas Corpus and Social Security cases referred to magistrate judges of the court.

**SPECIAL MANAGEMENT CASE ASSIGNMENTS**
**(See §1.02 (e) Management Track Definitions of the**
**Civil Justice Expense and Delay Reduction Plan)**

Special Management cases will usually include that class of cases commonly referred to as "complex litigation" as that term has been used in the Manuals for Complex Litigation. The first manual was prepared in 1969 and the Manual for Complex Litigation Second, MCL 2d was prepared in 1985. This term is intended to include cases that present unusual problems and require extraordinary treatment. See §0.1 of the first manual. Cases may require special or intense management by the court due to one or more of the following factors: (1) large number of parties; (2) large number of claims or defenses; (3) complex factual issues; (4) large volume of evidence; (5) problems locating or preserving evidence; (6) extensive discovery; (7) exceptionally long time needed to prepare for disposition; (8) decision needed within an exceptionally short time; and (9) need to decide preliminary issues before final disposition. It may include two or more related cases. Complex litigation typically includes such cases as antitrust cases; cases involving a large number of parties or an unincorporated association of large membership; cases involving requests for injunctive relief affecting the operation of large business entities; patent cases; copyright and trademark cases; common disaster cases such as those arising from aircraft crashes or marine disasters; actions brought by individual stockholders; stockholder's derivative and stockholder's representative actions; class actions or potential class actions; and other civil (and criminal) cases involving unusual multiplicity or complexity of factual issues. See §0.22 of the first Manual for Complex Litigation and Manual for Complex Litigation Second, Chapter 33.