IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SOFT PRETZEL FRANCHISE SYSTEMS INC. | : : : | |
| v. | : : | CIVIL ACTION NO. 13-3790 |
| TARALLI, INC. (a/k/a TARALLI ENTERPRISES, LLC), STEVEN M. PISASALE, and LISA A. PISASALE | : : : | |

**SURRICK, J.**                                                                                   **SEPTEMBER  5 , 2013**

## MEMORANDUM

Presently before the Court is Defendants' Motion to Dismiss (ECF No. 14). For the following reasons, Defendants' Motion will be denied.

**I.     BACKGROUND**

    **A.     Factual Background**

Plaintiff, Soft Pretzel Franchise Systems, Inc. ("SPF"), initiated this action for preliminary injunctive relief to enforce a covenant not to compete and an equipment buy-back provision contained in the parties' Franchise Agreement. (Compl., ECF No. 1.) SPF is a franchisor of Philly Pretzel Factory, a retail business offering traditional "South Philadelphia" pretzels and other authorized products. (*Id*. at ¶ 7.) SPF is a Pennsylvania corporation with its principal place business in Philadelphia. (*Id*. at ¶ 1.)

Defendants Steven M. Pisale and Lisa A. Pisale are husband and wife, and sole owners of Taralli, Inc., a/k/a Taralli Enterprises, LLC, ("Taralli"), a New Jersey based limited liability company. (*Id.* at ¶¶ 2-3.) On December 21, 2006, Taralli and Plaintiff executed a franchise

1

agreement pursuant to which Taralli obtained the right to operate a Philly Pretzel Factory in Marlton, New Jersey. (*Id.* at ¶ 8.)

According to Plaintiff, Defendants violated the terms of their Franchise Agreement by failing to report the franchise's gross sales, and failing to pay royalty, advertising, and legal fees. (*Id.* at ¶ 10.) As a result of these violations, on January 11, 2013, Plaintiff sent Defendants a notice of default giving them fifteen days to cure their monetary defaults. (*Id.*) Defendants failed to do so and the Franchise Agreement was terminated on February 5, 2013. (*Id.* at ¶¶ 11-12.)

On February 8, 2013, Defendants filed a complaint and order to show cause before the Superior Court of New Jersey, Burlington County, Chancery Division, in order to prevent the termination. (*Id.* at ¶ 13.) On May 31, 2013, the Honorable Karen L. Suter entered an Order permitting Plaintiff to proceed with the termination of the franchise and ruled that the termination would be effective June 14, 2013. (*Id.* at ¶ 14.) After the hearing, Defendants' counsel advised Plaintiff in a letter dated June 4, 2013 that Defendants would continue to operate a pretzel shop at its current location under the name "Marlton Soft Pretzels." (*Id.* at ¶ 15.) Plaintiff responded in a letter dated June 12, 2013, that Defendants' intention to operate a pretzel business in that location violated the Franchise Agreement's covenant not to compete. (*Id.* at ¶¶ 16-17.) Plaintiff also informed Defendants that it intended to exercise its right, pursuant to the Franchise Agreement, to purchase Defendants' equipment, including a proprietary pretzel stringing machine. (*Id.* at ¶¶ 17, 19.)

Defendants have refused to sell the equipment and to date continue to operate a pretzel business out of the Marlton, New Jersey location. (*Id.* at ¶ 19.) As a result of Defendants' failure to cease operations and sell the equipment, Plaintiff instituted arbitration proceedings

requesting permanent injunctive relief and $60,000 in damages for breach of the Franchise Agreement.  (*Id.* at ¶ 5; Demand for Arbitration, Compl. Ex. B)

### B.  Procedural History

On June 28, 2013, Plaintiff filed a Complaint which requested preliminary injunctive relief pending the outcome of the arbitration.  On July 1, 2013, Plaintiff filed a motion for preliminary injunction.  (ECF No. 2.)  A hearing was held on Plaintiff's motion on July 24, 2013.  (July 24, 2013, Hr'g Tr., ECF No. 12.)  After the hearing, on August 6, 2013, Defendants filed the instant Motion to Dismiss for Lack of Jurisdiction.  (Defs.' Mot., ECF No. 14.)  Defendants contend that Plaintiff cannot establish that the amount in controversy exceeds the statutory threshold of $75,000.  Plaintiff submitted a response on August 15, 2013.  (Pl.'s Resp., ECF No. 15.)

## II.  LEGAL STANDARD

### A.  Federal Rule of Civil Procedure 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1) a party may bring a motion to dismiss a complaint for lack of subject-matter jurisdiction.  A 12(b)(1) motion may be treated as either a facial or factual challenge to the Court's jurisdiction.  *Gould Elec. Inc. v. United States*, 220 F.3d 169, 177 (3d Cir. 2000).  A facial attack "concerns an alleged pleading deficiency," while a factual attack addresses "'the actual failure of [a plaintiff's] claims to comport [factually] with the jurisdictional prerequisites.'"  *Edmonson v. Lincoln Nat. Life Ins. Co.*, 777 F. Supp. 2d 869, 877 (E.D. Pa. 2011) (quoting *United States ex rel. Atkinson v. PA. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007)).

If the defendant presents a factual attack, the court is permitted to consider evidence outside the pleadings, *id.*, and is "free to weigh the evidence and satisfy itself that it has the

power to hear the case." *Int'l Ass'n of Machinists & Aerospace Workers v. Nw. Airlines, Inc.*, 673 F.2d 700, 711 (3d Cir. 1982); *see also Edmonson*, 777 F. Supp. 2d at 877-78 (quoting *Turicentro, S.A. v. Am. Airlines Inc.*, 303 F.3d 293, 300 n.4 (3d Cir. 2002) ("The court has 'discretion to allow affidavits, documents, and even limited evidentiary hearings' in weighing the evidence on a factual attack.")). If presented with a factual challenge the court does not presume the truthfulness of the allegations in the complaint. *Edmonson*, 777 F. Supp. 2d at 877. In either a facial or factual attack, the plaintiff bears the burden of proving subject matter jurisdiction. *Mash Enter., Inc. v. Prolease Atl. Corp.*, 199 F. Supp. 2d 254, 256 (E.D. Pa. 2002) (citing *Dev. Fin. Corp. v. Alpha Hous. & Health Care, Inc.*, 54 F.3d 156, 158 (3d Cir.1995)). We construe Defendants' Motion as a factual challenge to subject matter jurisdiction, as Defendants assert that the amount in controversy fails to meet the $75,000 jurisdictional threshold.

    **B.**  **Diversity Jurisdiction**

  Plaintiff asserts diversity jurisdiction under 28 U.S.C. § 1332, which provides in relevant part that "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States . . . ." 28 U.S.C. § 1332. Defendants concede that the parties are citizens and residents of different states. (Defs.' Mot. 11.) Thus, the question before this Court is how to determine the amount in controversy in this matter.

  In diversity cases, the court generally accepts the plaintiff's good faith allegation of the amount in controversy, but if challenged, the plaintiff must produce sufficient evidence to justify its claims. *Columbia Gas Transmission Corp. v. Tarbuck*, 62 F.3d 538, 541 (3d Cir. 1995). "'It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.'" *Id.* (quoting *St. Paul Mercury Indemnity Co. v. Red Cab. Co.*, 303 U.S. 283,

289 (1938)).  Where the plaintiff seeks injunctive relief it is well settled that "the amount in controversy is determined by 'the value of the object of the litigation.'"  *Schuylkill Twp. v. CitySwitch LLC*, No 08-5681, 2009 WL 2018531, at *4 (E.D. Pa. July 13, 2009) (quoting *Columbia Gas*, 62 F.3d at 541).  The Third Circuit has recognized that for purposes of determining the amount in controversy, the value of the equitable relief must be determined from the perspective of the plaintiff.  *See In re Corestates Trust Fee Litig.*, 39 F.3d 61, 65 (3d Cir. 1994) ("[I]t is the value to plaintiff to conduct his business or personal affairs free from the activity sought to be enjoined that is the yardstick for measuring the amount in controversy." (quoting 14A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure, § 3708 at 143-44 (2d ed. 1985))); *see also Byler Mgmt. Co, LLC v. Bulletproof Enters., Inc.*, No. 10-0632, 2010 WL 2431823, at *4 (M.D. Pa. June 14, 2010) ("[W]e look at the value of the litigation from the plaintiff's point of view."); *Pierson v. Source Perrier, S.A.*, 848 F. Supp. 1186, 1189 (E.D. Pa. 1994) ("[T]he rule in this circuit has long been that in a suit for an injunction, the amount in controversy is determined by the value of the object to be gained by the plaintiff.") (internal quotation marks omitted).

### III.   DISCUSSION

Defendants contend that the amount in controversy calculation cannot include the monetary damages claimed by Plaintiff in the arbitration proceeding since such damages are not the subject of this preliminary injunctive motion.  (Defs.' Mot. 12-13, 17.)  Plaintiff responds that the Court must look to the value of the object being litigated in arbitration to arrive at the appropriate amount in controversy.  (Pl.'s Resp. 3.)

Plaintiff's approach is consistent with Third Circuit's practice in cases seeking to compel arbitration.  In those cases, the Third Circuit has held that "the amount in controversy in a

5

petition to compel arbitration or appoint an arbitrator is determined by the underlying cause of action that would be arbitrated." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877 (3d Cir. 1995); *see also Manze v. State Farm Ins. Co.*, 817 F.2d 1062, 1068 (3d Cir. 1987) ("In considering the jurisdictional amount requirement the court should look through the possible award resulting from the desired arbitration . . . ."). The Third Circuit considers the petition to compel arbitration as "only the initial step in a litigation which seeks as its goal a judgment affirming the award." *Jumara*, 55 F.3d at 877 (quoting *Davenport v. Procter & Gamble Manufacturing Co.*, 241 F.2d 511, 514 (2d Cir. 1957)).

Although the instant case is not an action to compel arbitration, we find these cases instructive in determining the jurisdictional amount. Here, Plaintiff requests preliminary injunctive relief pending the outcome of the arbitration proceeding. The preliminary injunction is the first step in a litigation which seeks as its goal the same permanent injunctive relief, in addition to damages. Accordingly, we will look to the amount in controversy claimed in the underlying arbitration proceeding. *See Action Air Freight, Inc. v. Pilot Air Freight Corp.*, 769 F. Supp. 899, 900-01 (E.D. Pa. 1991) (holding that in an action for preliminary injunction the jurisdictional amount was satisfied by looking to the amount in controversy from the arbitration proceeding); *see also Gen. Transp. Servs., Inc. v. Kemper Ins. Co.*, No. 03-620, 2003 WL 21703635, *2-3 (N.D.N.Y. June 25, 2003) (recognizing that although the action did not arise from a motion to compel arbitration, the possible award resulting from arbitration was used to determine the amount in controversy).

In the arbitration proceeding Plaintiff: (1) requests monetary damages as a result of the breach of the franchise agreement; (2) seeks to enforce Plaintiff's right to purchase Defendants' equipment, including the proprietary pretzel stringing machine; and (3) seeks to permanently

enjoin Defendants from the continued operation of a pretzel business at the former SPF franchise location, and from any further violations of the covenant not to compete clause.

With respect to request one, Plaintiff claims that Defendants paid approximately $15,000 per year in royalties.  (Martin Ferrill ("Ferrill") Aff. ¶ 11, Pl.'s Resp.)  At the time of the termination of the Franchise Agreement, Defendants had three years and six months left in the Franchise Agreement.  (*Id.*)  Thus, Plaintiff seeks $52,500 in lost future royalty payments.  (*Id*. at ¶ 12.)

Section 14.1 of the Franchise Agreement provides that Plaintiff will pay "book value" for a franchisee's equipment upon termination of the franchise agreement.  (Franchise Agreement § 14.1, Compl. Ex. A.)  Book value is defined as the amount paid for the property less depreciation, using a straight line depreciation method on a ten year depreciation schedule.  (*Id.*)  Defendants purchased the equipment for $125,000 in 2006.  (Ferrill Aff. ¶ 6.)  Pursuant to the depreciation formula, Plaintiff claims that the equipment is worth $50,000.  (*Id.* at ¶ 8.)

Plaintiff values its third request at $20,000—the initial franchise fee paid by Defendants.  (Pl.'s Resp. 5.)  Plaintiff claims that the initial franchise fee paid by Defendants represents the value of the Defendants continued use of the franchisors' confidential and proprietary information in violation of the covenant not to compete.  This amount when combined with the $52,500 estimate of unpaid royalties, and the $50,000 estimated value of the equipment, far exceeds the $75,000 jurisdictional threshold.  Therefore, without making an exact determination as to the value of the damages or other injunctive relief requested by Plaintiff, we are compelled to conclude that the amount in controversy requirement is satisfied and that this Court has jurisdiction over the subject matter of this suit.

## IV.     CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss will be denied.

An appropriate Order follows.

                    **BY THE COURT:**

                    _____

                    **R. BARCLAY SURRICK, J.**